LAFFERTY *v.* JELLEY.

CHAMPERTY—CONTRACTS.—Where *A*, by power of attorney, constitutes *B*, a lawyer, his agent to secure and collect his interest in an estate, and, as a part of the same transaction, *B* agrees to prosecute the claim for *A* for one-half of whatever of said estate he might so obtain, it being apparent that litigation in Court was contemplated for the recovery of said claim, such contract is champertous and void.

PRINCIPAL AND AGENT.—As a general rule, in all cases where a person is, either actually or constructively, an agent for another, all

Lafferty v. Jelley.

profits and advantages made by him in the business of the agency, beyond his ordinary compensation, will belong to his principal.

ILLEGAL CONTRACT—RESCISSION.—A party to an illegal executory contract may rescind or repudiate it, and an executed contract subsequently made, inconsistent with it, will amount to a rescission or repudiation of it.

APPEAL from the *Ohio* Common Pleas.

PERKINS, J.—In 1850, *John M. Daniels* departed this life, intestate, at *Rising Sun, Indiana,* leaving neither widow nor children, but an estate of the value of some 3,000 dollars. Letters of administration upon his estate were granted to *Brown, Tapley* and *Dodd.* See *Brown* v. *King,* 2 Ind. 520.

In *February,* 1851, the Court ordered the administrators to pay over the moneys belonging to the estate to *James S. Jelley, Esq.,* as agent of *John, James, Nancy, Darius* and *Boone McGee,* alleged infant heirs of said *John M. Daniels,* deceased. This illegal order was reversed by the Supreme Court. See *Tapley* v. *McGee,* 6 Ind. 56.

In 1858, the administrators of *Daniels* obtained judgment against *Jelley,* in a suit that had been pending for some length of time, for 2,631 dollars and 26 cents, of which judgment, it would seem, *Jelley* paid at least 600 dollars. The balance of the judgment, we take it, represented the amount of money in *Jelley's* hands, belonging to the estate of *Daniels,* for distribution among his heirs; and the question had arisen, who were those heirs? The *McGees,* above named, were the kindred of *Daniels* first discovered. They were cousins, living in *Pennsylvania.* Next, *Mary Lafferty,* wife of *James Lafferty,* a sister of *Daniels,* living in *Canada,* was found. She was the heir.

On the 30th of *August,* 1854, said *Mary Lafferty,* jointly with her husband, executed to *John W. Spencer,* of *Rising Sun, Indiana,* a power of attorney, to, in their names, prose-

cute and defend all suits then pending, or thereafter to be instituted, touching the settlement and recovery for them of the estate of *John M. Daniels*, deceased; and, on the same day, apparently as a part of the same transaction, entered into an arrangement with *Spencer* by which he undertook "to prosecute the claim of *Lafferty* and wife to the estate," &c., for "one-half of whatever of said estate" he might so obtain, &c.

Under this contract, we may here remark, *Mrs. Spencer*, then the wife, and now the heir of *John W. Spencer*, who has deceased, claims the proceeds of the judgment against *Jelley* above referred to; but, according to the case of *Coquillard's Adm'r* v. *Bearss et al.*, 21 Ind. 479, and the cases cited, we think the contract champertous and void. We think litigation in Court was contemplated for the recovery of the subject matter of the contract. The questions as to how far the contract had been executed, whether it had been by the *Laffertys* repudiated, and whether *Spencer* was not entitled upon a *quantum meruit* for services rendered, are here passed by. See, however, *Tracy* v. *Talmadge*, 4 Seld. (N. Y.) Rep. 162.

Early in 1851, at least, *Jelley* had become the attorney of the *McGees*, and undertaken to obtain the estate of *Daniels* for them. As early as 1855, at least, he had notice of the existence of *Mrs. Lafferty*, her relationship to *Daniels*, and of her contract with *Spencer*. On the 17th of *July*, 1858, while the suit by the administrator of *Daniels* against *Jelley*, for the moneys of the estate in his hands, was pending, and had been continued from term to term for a year, and in which suit the recovery was for 2,600 dollars, a paper of the following substance was executed to him:

"Know all men that, we, *James* and *Mary Lafferty*, of *Montreal, Canada*, for 250 dollars in hand, paid by *James S. Jelley*, and for certain further considerations, &c., have this day sold and assigned to said *Jelley*, all our interest in the personal

estate of *John M. Daniels,* deceased, to control and manage so far as our interest hereby sold is concerned, and give him power to settle said estate, as may be satisfactory to him, to give receipts, and as our attorney, to strike out our names from all suits, and to insert his own instead if he desires. And we disclaim having any rights in said estate from this day; and it is understood and agreed by us that, in consideration of this settlement and compromise, we release all claims to all moneys heretofore paid by administrators of said estate, by order of the Probate Court of *Ohio* county, to said *Jelley,* as attorney of the heirs of *Dudley McGee,* and for —— *Owens,* their guardian; the same is released to said *Jelley,* and we direct that any suit or suits for the recovery of said moneys may be dismissed."

It thus appears that, while *Jelley* was defending a suit in behalf of the *McGees,* his clients, he purchased in the subject matter of the suit, from those claiming by another title, for his own benefit. This, it would seem, he could not do, should those parties interpose. *Story* says, in his work on Agency, sec. 211, that it is a general principle, "that in all cases, where a person is, either actually or constructively, an agent for other persons, all profits and advantages made by him in the business, beyond his ordinary compensation, are for the benefit of his employers." It may be observed that *James Lafferty* swears that *Jelley* was to give his wife half the estate over and above the 250 dollars. *Jelley* did not plead this assignment of the estate, in the suit pending, but, after judgment against him in that, he instituted this suit to obtain an entry of satisfaction upon the judgment, on the ground that he was the beneficial owner of it, in his own right, and he obtained judgment for such entry of satisfaction below, from which the present appeal to this Court was taken.

*Jelley's* right to the entry of satisfaction of the judgment was resisted below, by, among others, *John Lafferty,* a son of

Lafferty *v.* Jelley.

*James* and *Mary Lafferty*, to whom said *James* and *Mary*, on the 26th of *November*, 1858, relinquished, for a consideration, all their interest in the estate of *Daniels*, deceased.

A party to an illegal executory contract may rescind or repudiate it. *Morris* v. *Philpot*, 11 Ind. p, 447.

Hence, the contract of the *Laffertys* with *Spencer* did not preclude them from selling their interest in *Daniels'* estate to *John Lafferty*. And, it having been judicially established that *Mary Lafferty* was the legal heir to all *Daniels'* estate, and that estate being in *Jelley's* hands, if he, by representations, fraudulent in law, obtained an acquittance from the heir by paying a less sum than the heir was entitled to, the heir, or assignee of the heir, may show such fact, and recover the balance due. See *Crassen et al.* v. *Swoveland*, at this term.

A receipt for an entire debt, upon payment of a part of it, even where there is no fraud, will not always protect the debtor from a suit for the balance. *Fitzgerald* v. *Smith*, 1 Ind. 310.

Does the record make a case of fraud, in the eye of the law, on the part of *Jelley*, in settling with *James* and *Mary Lafferty?* In answering this question, we shall treat the contract then made by *Jelley*, as made on his own account, and not on account of his clients, the *McGee* heirs, because he has so treated it, and they are not now interposing.

We are constrained to hold that the record, all that we can look at, makes a case of fraud. The record informs us that:

1. *Jelley* represented to *James Lafferty*, who acted for his wife in the premises, that the question of the heirship of his wife was doubtful, while *Jelley* himself considered it so clear that he had abandoned the conflicting, or rival claim, of the *McGees*, and was proceeding to buy from *Lafferty* on his own account.

2. He represented that he had paid amounts to the *McGees* under an order of Court, which would protect him from re-

payment, when he had not paid them any thing, but had the whole estate in his own hands. This was matter touching which *Lafferty* almost necessarily relied on the statement of *Jelley.*

3. He represented that the balance of the estate did not amount to more than 500 dollars, when he must have known that it amounted to over 2,000 dollars. This was matter peculiarly, under the circumstances, within his knowledge.

Considering the situation of the respective parties, we think these facts make a case of fraud in law, and they are not, in our opinion, rebutted by any thing appearing in the record. The parties did not stand on equal ground. The case is a peculiar one in its facts and circumstances. We think the motion for a new trial should have been sustained below, because the finding was against the evidence. We are not satisfied that right has been done in this case, and think there ought to be another trial.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded for a new trial.

*A. C. Downey*, for the appellants.

*J. E. McDonald* and *A. L. Roache*, for the appellee.