NEBRASKA POWER COMPANY, APPELLEE, V. ARNOLD C. KOENIG ET AL., APPELLANTS.

FILED JANUARY 31, 1913. No. 17,743.

1. **Trusts: CONSTRUCTIVE TRUSTS: ENFORCEMENT IN EQUITY.** A court of equity may acquire jurisdiction to decree that a trustee filed in his own name for the beneficiary an application to divert water from a river, though he asserts he acted for himself alone, and shows that, for the purpose of canceling prior, adverse applications of the beneficiary, he instituted a contest which is pending before the state board of irrigation.

2. **Corporations: DIRECTORS.** A director of a corporation is a fiduciary and is treated by courts of equity as a trustee.

3. **Trusts: CONSTRUCTIVE TRUSTS.** The rules of equity which determine the consequences of acts performed by a fiduciary extend to all cases, where, on one hand, confidence is properly reposed, and, on the other, knowledge or authority or influence arises from the fiduciary relation.

4. ———: ———. A person gratuitously or officiously assuming as

agent or trustee to control or manage the property or interests of another is as firmly bound by the implied terms of his confidential relation as one who is regularly employed and paid.

5. ———: ———: ABANDONMENT OF RELATION. A fiduciary by abandoning his trust and by assuming toward the beneficiary a hostile attitude cannot change the legal consequences of former relations and conduct.

6. ———: ———: OBLIGATION OF TRUSTEE. Means and knowledge acquired by a fiduciary in performing the duties of his trust cannot be used by him to gain a personal advantage at the expense of the beneficiary.

7. ———: ———: ———. Outside of proper compensation and expenses, any advantage gained by a trustee, either in performing his duty or in betraying his trust, inures to the benefit of the beneficiary.

8. ———: ———: RESTORATION OF BENEFITS. The benefit arising from an application to divert water from a stream for power is one which may be restored by a court of equity to the beneficiary, if acquired and held by a trustee in his own name in violation of his duties.

9. ———: ———: ———. A fiduciary, engaged as such in the work of establishing water rights, cannot acquire and hold for himself new, adverse rights, and justify his conduct by asserting that prior holdings of his principal were subject to forfeiture; and, if he attempts to do so, he will be held accountable as a trustee.

10. Foreign Corporations: POWERS: ACTS OF DIRECTOR: ESTOPPEL. Where a director of a nonresident corporation, which is authorized by its charter to acquire water rights for an electric power plant, asserts and exercises such rights on behalf of the corporation, he is estopped to deny it has that authority, when called to account as a fiduciary for making in his own name applications for adverse water rights.

11. ———: FILING ARTICLES. The prosecuting of a suit is not transacting business, within the meaning of the statutes requiring a corporation to file its articles of incorporation with the secretary of state, before transacting business in Nebraska.

12. ———: HOLDING REAL ESTATE: DIRECTORS: ESTOPPEL. To procure an advantage personal to himself, a director of a nonresident corporation cannot urge its statutory disability to hold real estate, where it is authorized to do so by its articles of incorporation.

APPEAL from the district court for Platte county: CON-
RAD HOLLENBECK and GEORGE H. THOMAS, JUDGES.
*Affirmed.*

*Field, Ricketts & Ricketts, C. C. Flansburg* and *E. J.
Hainer,* for appellants.

*A. M. Post, Jesse L. Root, E. C. Strode* and *M. V.
Beghtol, contra.*

ROSE, J.

This is a suit for an injunction. The parties are rival
claimants to rights growing out of an application to divert
from the Loup river 3,200 cubic feet of water a second for
the purpose of operating a hydro-electric power plant. The
application was filed with the state board of irrigation by
defendant Koenig. His codefendants are his transferees.
Plaintiff is a corporation for which Koenig had been a
director and an engineer. It pleads facts under which it
asserts that it acquired prior rights to the use of waters
of the same stream; that earlier applications had been
transferred to it; that Koenig was its fiduciary or trustee,
by reason of his directorate and his employment as en-
gineer; that his filing inured to its benefit; that it is the
beneficial owner of whatever rights arose from the filing
of the application by Koenig, and that he wrongfully
instituted before the state board of irrigation a contest of
plaintiff's prior applications; that his contest is based on
the false assertion that he is individually entitled to the
benefits of his application for water rights instead of
plaintiff. Koenig claims that he is not answerable as
trustee; that in making his application he properly acted
in his own behalf; and that he became the legal owner of
accruing rights. The principal questions litigated may
be stated thus: In equity, did Koenig file the application
for plaintiff? Who is entitled to the benefit of Koenig's

preliminary step in filing his application to acquire water rights? The facts on which the parties rely are fully pleaded. A vast amount of testimony was adduced on both sides. The trial court found that Koenig and his codefendants held the application in trust for plaintiff, and enjoined them from using it to contest the earlier applications which had been transferred to plaintiff. Defendants have appealed.

The injunction is first challenged as an interference with the exclusive original jurisdiction of the state board of irrigation to allot and administer the waters of the state. The argument on this point is unsound for the following reasons: The issues presented to the trial court did not involve the allotting or the administering of any of the waters of the state. Neither the priority nor the validity of any application for water was adjudicated. No such application was sustained or disallowed. It was not decided that the filing made by Koenig was valid or invalid. All subjects over which the state board of irrigation had exclusive original jurisdiction were left open. On issues properly raised, it was found that Koenig made the application as a fiduciary, and that any interest arising therefrom belonged to plaintiff. This was a proper subject of judicial inquiry, and, in making it, the exclusive province of the administrative board was not invaded. The contest of earlier applications was based on the filing of Koenig. If he acted for plaintiff, and if inuring interests were plaintiff's, why should not a court of equity say so and restore the legal title to the beneficial owner? As between plaintiff and its fiduciary, why was not the former entitled to legal evidence of its ownership in the form of a decree in equity? If the rights growing out of the Koenig application belonged to plaintiff, why should Koenig, a trustee, be allowed to make use of the claim of plaintiff to contest its earlier applications? These are questions into which the court of equity below inquired, and, in doing so, it kept within its jurisdiction, and did not improperly interfere with that of the state board of

irrigation. The issues and the decree will admit of no other interpretation.

On the merits of the case, defendants concede the fundamental question to be: Was the Koenig application held in trust for plaintiff? Though the entire record, voluminous as it is, and all observations of counsel have been carefully considered, references to the facts must necessarily be brief. Beginning August 24, 1895, and ending July 30, 1906, H. E. Babcock, a resident of Ord, Nebraska, filed with the state board of irrigation a number of applications to divert water from the Loup river for irrigation and power. His filings were made for the benefit of the Central Irrigation Company, a Nebraska corporation, of which he was the president and a director. The interests, rights and property acquired by him were transferred to plaintiff, a corporation organized under the laws of Delaware. Babcock is plaintiff's president, and is also a member of its board of directors. In promoting the enterprises initiated in the manner stated, plaintiff and its predecessors have invested a large amount of capital. A number of surveys were made, and valuable engineering data were collected. Some canals were dug, and other work was started. During the years 1910 and 1911 plaintiff's officers sought capital to complete and carry on the work begun. To this end Babcock tried to interest Henry L. Doherty, a promoter of New York City, and furnished him information in regard to conditions and prospects. A like service on behalf of plaintiff was undertaken by Fritz Jaeggi, who appealed to G. Wegmann, a resident and capitalist of Zurich, Switzerland. Jaeggi was plaintiff's principal stockholder, and was also a director. He had been a resident of Switzerland, and had formed intimate business relations with Wegmann. The latter asked for technical information, including reports of engineers. Babcock and Jaeggi worked in harmony in the interests of plaintiff to unite Doherty and Wegmann in a plan to finance its power project. For services as an engineer, Koenig accepted capital stock issued by plaintiff, and be-

came a director in 1910. As such, he attended meetings of the board of directors, and otherwise participated actively in the affairs of the corporation. Under employment by president Babcock, he performed services as engineer in connection with the power enterprise in 1909. He had access to plaintiff's records. He used the engineering data collected by former engineers. He conferred with Doherty and sought employment from Wegmann. The latter asked him to make reports and to furnish technical information in regard to the matter with a view to investing a large amount of capital. In complying with Wegmann's wishes, Koenig not only used the work of the engineers who had formerly been in the service of plaintiff, but discussed in his correspondence his directorate and the validity of plaintiff's applications to use the water of the Loup River. After Koenig had been thus engaged, he made the application in controversy while he was one of plaintiff's directors. It was filed September 30, 1910. His point of diversion from the Loup River is a short distance above that upon which plaintiff chiefly relies. If Koenig procures and exercises the rights demanded in his application, plaintiff's power project will be injured, if not destroyed. Some of plaintiff's officers testified they understood from what Koenig had said in regard to his purposes that he made the filing for the benefit of plaintiff. In any event, he did not obtain from plaintiff permission to make the application in his own behalf. Claiming for himself all benefits arising from the application which he had filed in his own name, he resigned his directorate in March, 1912, and early in the following month instituted before the state board of irrigation a contest in which he prayed for the cancelation of all prior applications on which the success of plaintiff's power project depended.

The facts and conclusions thus briefly stated are proper deductions from the evidence, though defendants assert, and argue there is testimony to prove, that Koenig assumed no obligation to procure water rights for plaintiff; that he practiced no fraud or deception; that he violated

no obligation or duty to plaintiff; that he informed plaintiff of his doings; that he advised plaintiff its old applications had lapsed for failure to comply with statutory requirements; that he entered the employ of Wegmann with the knowledge and consent of plaintiff; that, in addition to his work, he expended thousands of dollars in the course of his employment; that, after receiving the benefit of his services, Wegmann and plaintiff refused to make new filings to protect itself or him from the forfeiture of the other applications; that on account of the surveys he had made, the report and plans he had worked out, and the expenses he had incurred, he was obliged for his own protection to make the application in controversy; and that he was not a constructive trustee whose filing was made for plaintiff.

In equity, for whom did Koenig act when he filed the application to take from the Loup river above plaintiff's point of diversion 3,200 cubic feet of water a second? That amount of water will practically exhaust the supply during a considerable part of the year. If the filing was intended for the individual benefit of Koenig, it was an act of distinct hostility to plaintiff. It brought on a contest, which, if successful, would result in the cancelation of every right of plaintiff to take water from the Loup river for irrigation or power. In addition to being a director, Koenig had been employed as an engineer to perform special services for which his skill and training had prepared him. It does not appear, however, that it was any part of his duty to determine that the early applications had been forfeited. Counsel took a different view of the law, and so advised plaintiff. The value of the right to divert 3,200 cubic feet of water a second from the Loup river for power was learned, in part at least, through his special employment while he was performing his duties to plaintiff and examining engineering data collected by other specialists formerly engaged in the same project. Koenig's directorate alone made him plaintiff's fiduciary.

Judge Thompson in his work on Corporations says:

"The rule is thoroughly embedded in the general juris-
prudence of both America and England that the status of
directors is such that they occupy a fiduciary relation
toward the corporation and its stockholders, and are
treated by courts of equity as trustees.   Courts hold the
directors of a corporation to the strictest accountability.
Conduct inconsistent with any duty is condemned.   The
fiduciary relation is so vital that directors are not only
prohibited from making profit out of corporate contracts,
and from dealing with the corporation except upon the
most open and on the fairest terms, but the rule of ac-
countability is so strict that they are not permitted to
anticipate the corporation in the acquisition of property
reasonably necessary for carrying out the corporate pur-
poses or conducting the corporate business."   2 Thomp-
son, Corporations (2d ed.) secs. 1215, 1246.

To the confidential relation created by the office of di-
rector, there is added in the present case the duties and
obligations growing out of the fiduciary's employment as
an engineer and the knowledge and influence acquired in
that capacity.   In *Wright v. Smith,* 23 N. J. Eq. 106, the
chancellor said:   "Every man has a trust to whom a
business is committed by another.   Every man is a trus-
tee whose office is to advise or to operate, not for himself,
but for others."   The rules of equity which determine the
consequences of acts performed by a fiduciary are not re-
stricted to attorney and client, nor to similar conventional
relations, but extend to all cases, where, on one hand,
confidence is properly reposed, and, on the other, knowl-
edge or authority or influence arises from any cause.
*McCormick v. Malin,* 5 Blackf. (Ind.) *509.

A person gratuitously or officiously assuming as agent
or trustee to control or manage the property or interests
of another is as firmly bound by the implied terms of his
confidential relation as one who is regularly employed and
paid.   *Wright v. Smith,* 23 N. J. Eq. 106.   Koenig, by re-
signing his directorate in March, 1912, and by instituting
his contest a few days later, did not change the legal con-

sequences of his former relations and conduct. A fiduciary who enters upon the performance of duties growing out of his confidential relations is not permitted to abandon his trust at pleasure to the injury of the principal or the beneficiary. *Tisdale v. Tisdale,* 2 Sneed (Tenn.) 595, 64 Am. Dec. 775.

Among the principles enforced by courts of equity in dealing with conduct growing out of relations of trust and confidence are the following: Means and knowledge acquired by a trusted representative in performing the duties of his trust cannot be used by him to gain an individual advantage at the expense of his employer. *Cottom v. Holliday,* 59 Ill. 176. In matters relating to the subject of an agency or a trust, the fiduciary acts for his principal alone. *Porter v. Woodruff,* 36 N. J. Eq. 174. Outside of proper compensation and expenses, any advantage gained by a trustee, either by performing his duty or by betraying his trust, inures to the benefit of the beneficiary or principal. *Dodd v. Wakeman,* 26 N. J. Eq. 484; *Lafferty v. Jelley,* 22 Ind. 471; *Moinett v. Days,* 60 Tenn. 431. The purpose of the law in dealing with relations of trust and confidence is to raise the trustee above the temptation to violate his duties to his employer or to the beneficiary. *Porter v. Woodruff,* 36 N. J. Eq. 174.

It is firmly established, both by English and American courts, that a trustee is bound to perform faithfully the duties relating to his trust, and that in doing so he cannot allow his own interests to interfere. If he unites his personal and representative capacities, he confuses transactions which the law requires him to keep separate and distinct. If he attempts to acquire an individual interest in the subject matter of his trust or agency, he creates a temptation to serve himself at the expense of the beneficiary or principal, and enters a realm where his secret purposes with reference to trust property or interests may escape judicial scrutiny. To prevent evil consequences from growing out of the advantages which his position gives him, it will be presumed that what he does in rela-

tion to the interests or property involved in the trust or agency is done in a representative capacity. For the same reason, any advantage beyond proper expenses and compensation belongs to the *cestui que trust*. Adherence to these doctrines keeps personal and representative transactions free from entanglement, removes from the fiduciary the temptation to gain an undue advantage, and permits courts of equity to enforce the rights of the beneficiary. The philosophy on which these rules of law and equity rest came down through the centuries from the Chancellor of Galilee. The wisdom and necessity of such doctrines become more apparent as the forms in which property is held multiply under new conditions, and as earning capital in the custody and control of agents or trustees follows new enterprises over the world, where it is not under the watchful eye of the owner. Courts of equity do not set bounds to the principles which control the conduct and fix the accountability of trustees. The elasticity of these rules extends their applicability to all of the devices invented by unfaithful fiduciaries to evade their obligations or to defeat the imperative demands of business integrity and sound public policy.

Though Koenig in making the application in his own name, and in asserting individual rights arising therefrom, may not have been prompted by any evil design, and though he may justify his conduct according to his own standards of business rectitude, equity will nevertheless enforce upon his conscience his implied obligation to refrain from all acts inconsistent with his duties to plaintiff, will deprive him of the illicit reward by which he was tempted to assume an attitude hostile to the interests he had undertaken to promote, and will restore to plaintiff the title in dispute.

Another argument advanced to defeat the injunction is that the mere filing of an application to use water of the Loup river for power does not create property which can be made the subject of a trust. Whatever right arose from that act has been made the subject of acrimonious litiga-

tion and vehement advocacy in this case. The assignability of such a right has resulted in negotiations by all parties to the suit, if it has not in fact been asserted in their contracts. For the purposes of the present inquiry, the nature of the right is immaterial. It arises from the preliminary step in what may become property of great value. The enterprises which may be developed through the use of water power are encouraged by statute. The steps essential to the acquiring of water rights are statutory, and do not of themselves involve immoral conduct or violate the public policy of the state. As a director it was the duty of Koenig to take part in procuring the water rights essential to the operation of a power plant. His fiduciary relation prevented him from acquiring adverse rights to waters of the same stream. Such a relation is not limited to a person in control of real property, but extends to confidential relations affecting other rights and interests. *Murphey v. Sloan,* 24 Miss. 658. For reasons already stated, equity will operate upon the conscience of Koenig and restore to plaintiff the benefits of his hostile acts, without regard to the nature of the adverse interests he attempted to acquire. The principle which binds him is indicated by the following doctrine announced by the supreme court of the United States: "If an agent discover a defect in the title of his principal to land, he cannot misuse it, to acquire a title for himself; and, if he does, he will be held as a trustee holding for his principal." *Ringo v. Binns,* 10 Pet. (U. S.) *269; Story, Agency (9th ed.) sec. 211.

Defendants argue, further, that plaintiff is a foreign corporation, without any right to transact business in Nebraska, and that therefore it is not entitled to the relief granted. The prosecuting of this suit is not doing business, within the meaning of the statute requiring a non-resident corporation to become a domestic corporation, before transacting business in Nebraska. Comp. St. 1911, ch. 16, secs. 126, 215; *Alpena Portland Cement Co. v. Jenkins & Reynolds Co.,* 244 Ill. 354; *General Conference*

*of Free Baptists v. Berkey*, 156 Cal. 466.   It follows that, in this respect, plaintiff, as a condition of obtaining relief, was not required to prove it had become a domestic corporation.

To show that the injunction was improperly granted, defendants contend that plaintiff, because it is a non-resident corporation, is forbidden by statute to acquire a water right in Nebraska, and that such a right, when perfected, is real estate, the title to which a nonresident corporation is without capacity to receive or hold.   Koenig was one of plaintiff's stockholders.   As an engineer he examined its engineering data and made independent investigations and surveys.   He assumed to know its status and prospects.   He advised capitalists to invest large amounts of money in its chief project.   As a director he asserted its capacity to acquire and hold water rights. Acting jointly with other directors he assumed and exercised such capacity.   Shall he now be permitted to deny that power in a court of equity, after having exercised it, and use his denial to establish a personal claim hostile to the very interests he had as a fiduciary solemnly undertaken to promote?   The answer is that he will not.   Estoppel prevents him from assuming that attitude here. *Macfarland v. West Side Improvement Ass'n*, 53 Neb. 417; *Centre & K. T. R. Co. v. M'Conaby*, 16 Serg. & Rawle (Pa.) 140; 3 Thompson, Corporations (2d ed.) sec. 2849; *Omnium Investment Co. v. North American Trust Co.*, 65 Kan. 50.

By statute the legislature has invited the investment of foreign capital in projects to utilize the waters of public streams.   Corporations organized in other states may become domestic corporations.   Comp. St. 1911, ch. 16, sec. 215.   The charter of plaintiff authorizes the enterprises undertaken by it in this state, and permits it to hold title to realty.   Statutory disability to take title does not make plaintiff an outlaw.   Contracts under which it holds real estate essential to the purposes of its existence are at most voidable at the suit of the state, and cannot be

challenged by the corporation's fiduciary to avoid the lawful consequences of his conduct in that capacity. 5 Thompson, Corporations (2d ed.) sec. 6688; *Missouri Valley Land Co. v. Bushnell,* 11 Neb. 192; *Carlow v. Aultman & Co.,* 28 Neb. 672; *Myers v. McGavock,* 39 Neb. 843; *Hanlon v. Union P. R. Co.,* 40 Neb. 52; *Kerfoot v. Farmers & Merchants Bank,* 218 U. S. 281; *Seymour v. Slide & Spur Gold Mines,* 153 U. S. 523; *National Bank v. Matthews,* 98 U. S. 621; *Fritts v. Palmer,* 132 U. S. 282. Koenig is estopped to raise this question, and his transferees are in no better situation.

There is no error in the decree, and it is

AFFIRMED.