JEPPE J. REFSHAUGE, SUCCESSOR-TRUSTEE, APPELLANT, V. SESOSTRIS TEMPLE ANCIENT ARABIC ORDER NOBLES OF THE MYSTIC SHRINE: FIRST TRUST COMPANY OF LINCOLN, APPELLEE.

298 N. W. 755

FILED JUNE 20, 1941. No. 31091.

*T. F. A. Williams,* for appellant.

*Hall, Cline & Williams, contra.*

Heard before PAINE, CARTER and MESSMORE, JJ., and ELDRED and ELLIS, District Judges.

MESSMORE, J.

This is an action by a successor-trustee to foreclose a real estate mortgage and to require an accounting by the original trustee. This appeal involves only the accounting. The trial court found against the successor-trustee, who appeals to this court.

In February, 1938, the successor-trustee filed an action to foreclose a first mortgage in the sum of $200,000. The First Trust Company, a party defendant, answered and cross-petitioned, praying foreclosure of a second mortgage in the amount of $18,437.50, and to recover for certain advancements made for insurance premiums, in compliance with the terms of the first mortgage, and for fixing drainage. The second mortgage was given as security for a commission note, payable in instalments, with the provision that in case of redemption of any of the first mortgage bonds the instalments in the commission note would be reduced proportionately. The instalments represented an annual charge of 1 per cent. of the bonds to be outstanding. The first and second mortgages were filed of record on the same day, October 2, 1928. The reply was a general denial, and set forth the terms of the first mortgage agreement, the execu-

tion and terms of the second mortgage as a commission mortgage, and the maturity dates of the mortgages; also the history of the transaction, which will be covered in the opinion as occasion requires. A decree of foreclosure was entered on the first mortgage, sale had and confirmed. The First Trust Company realized nothing on the second mortgage. The record discloses:

Ancient Arabic Order Nobles of the Mystic Shrine, referred to as Sesostris Temple, a corporation, designated as the parent organization of the Shrine Building Association, was incorporated February 28, 1927, for the purpose of receiving, investing and expending donations, contributions and subscriptions of money and other property of every kind, securing real estate, improving the same for the use of the Nobles of Sesostris Temple, and for the purpose of owning, constructing and furnishing a club house and recreation grounds. Pursuant to such purposes, the Shrine Building Association purchased and received title to 320 acres of land, recording the deed thereto March 2, 1927. On October 1, 1928, in furtherance of the purposes for which it had been created and incorporated, the Shrine Building Association borrowed $200,000 from the First Trust Company, executed and delivered to it, as trustee, 218 first mortgage bonds of the Shrine Building Association, and further conveyed by mortgage to the First Trust Company the real estate heretofore referred to.

The first mortgage or trust deed, by its terms, named the First Trust Company as trustee. The trust company, as such, sold bonds to various investors. To accelerate the sale, a prospectus was sent out to prospective purchasers, setting forth the bond issue, secured by a closed first mortgage on land owned by the Shrine Building Association and constituting a direct obligation of such corporation. The prospectus further contained a description of the buildings and improvements under construction, and represented the value of the entire project in the amount of $400,000. The prospectus further showed the Shrine Building Association as the holding company for Sesostris Temple, stating: "It

is supported by the initiation fees and annual dues of 2,500 members of this Temple." In the capacity of trustee, the First Trust Company received from the Shrine Building Association the following amounts: $4,000 applied on the principal of the bonds; $2,000 paid December 20, 1930; $2,000 paid April 30, 1931. In addition, the trustee collected from the Shrine Building Association a further aggregate sum of $6,000—$1,000 on each of the following dates: April 1, 1929, October 3, 1929, April 1, 1930, October 9, 1930, May 23, 1931, and April 1, 1932,—all applied on the principal of the second mortgage.

The record further shows that one Charles Stuart was president of the Shrine Building Association at the time of the giving of the first and second mortgages, and was also a director in the First Trust Company, and one of a board vested with the control of the business affairs of such trust corporation in which he owned 10 per cent. of the total stock. He most frequently specified the allocation payments made and was the principal contact man of the building association and the trust corporation during the period of the trusteeship. By reason of his offices, he formulated the entire transaction as between the Shrine Building Association and the First Trust Company. December 28, 1937, the First Trust Company resigned as trustee, and the successor-trustee was appointed.

The district court on July 5, 1940, entered a decree finding in favor of the cross-petitioner, the First Trust Company, and against the successor-trustee; that the moneys paid to the First Trust Company to be applied, and which were applied, on the second mortgage held by the trust company "were not paid from the income or profit from, or from the property mortgaged to secure the bondholders represented by the plaintiff; that said sums so paid were applied as directed by the persons paying the same; and that neither the plaintiff nor any of the bondholders had any right or lien thereon; and the claim of plaintiff against the First Trust Company of Lincoln, Nebraska, should be and hereby is dismissed." The court likewise found in favor of the

First Trust Company on the advancements made by it for insurance premiums and for fixing drainage. From this finding and judgment no *bona fide* contest exists. The trust agreement specifically provides for payment of such items and their priority.

The principal assignment of error relied on is that the findings and judgment of the trial court are contrary to the evidence and the law. The appellee, therefore, presents the question of whether or not the First Trust Company, as trustee, is required to account to the successor-trustee for $5,970, collected by it during the period of its trusteeship and credited to the part of its own second note and mortgage owing it from the Shrine Building Association and secured by the same property which secures the first mortgage.

This brings us to a consideration of the trust agreement between the Shrine Building Association and the First Trust Company, trustee, which agreement sets forth the first mortgage deed and the bonds, all of which constitute the trust agreement, reading in part as follows:

The First Trust Company "To have and to hold the premises, property, rights, interests, estates, easements, franchises and appurtenances hereby conveyed * * * together with all net revenues, incomes, issues, and profits arising therefrom or appertaining thereto unto the First Trust Company of Lincoln, Nebraska, its successors and assigns forever, but in trust, nevertheless, for the equal *pro rata* benefit and security of each and every one of the persons who may be or become the holders of the herein described bonds and coupons, issued under and secured by this agreement. * * *

"This agreement is made to secure payment of the sum of Two Hundred Thousand Dollars ($200,000) and interest, as evidenced by and payable according to the terms of the negotiable coupon bonds." The form of the bond is set out and constitutes a part of the trust.

The bonds are in specified denominations and contain, in brief, the following: A promise to pay at the office of the Lincoln Trust Company or the First Trust Company the

amount of the particular bond and interest, when payable; that the bond is equally secured by a first mortgage; and, in default, the manner in which the bond may become due; the right of the maker to redeem, and that the trustee has the right to receive the money and determine by lots the bonds to be redeemed. The instrument further pledges the Shrine Building Association to promptly pay the bond and interest when the same shall become due. The Shrine Building Association covenants that it will warrant and defend the property of said bond under the trust estate, its successors and assigns, and the association agrees to pay, during the existence of the agreement, all taxes and assessments levied, and to reimburse the trustee for taxes and insurance premiums paid by the trustee. The instrument provides for repairs to be made and the trustee's duty with reference to applying insurance moneys for rentals and repairs; provides that the Shrine Building Association may redeem any bond before maturity, and specifies the requirements in such respect; provides: "Until default shall be made by first party (Shrine Building Association) in the payment of principal or interest upon the bonds issued thereunder, or any of them, or some part thereof, or until default shall be made by them in respect to some other act or thing herein set forth to be done or to be performed by it, first party shall be entitled to possess, manage, operate, use and enjoy their property herebefore described (the property evidencing the real estate and improvements) and to receive, take, and use the rents, income and profits thereof."

The instrument further states: The trustee accepts the trust and agrees to execute the same under the terms as set out under the agreement. "The trustee shall be reimbursed for all moneys which may be advanced for taxes or insurance, together with interest thereon," and shall have a lien on the trust estate prior to the rights of the bondholders for such moneys advanced. "The trustee shall be reimbursed for all proper outlays of every sort or nature by it incurred in the acceptance and discharge of the trust hereunder, and shall receive a reasonable compensation for any duties that it

may at any time perform in the discharge of the same." The trustee is not "responsible for the execution or validity of the lien hereof, nor for the payment of the bonds issued hereunder," and may, itself, become owner of bonds, with the same rights and privileges that it would have if it were not the trustee.

The contention of the appellant is that the First Trust Company, as trustee, had, at all times, an interest adverse to the bondholders and in conflict therewith; that the commission mortgage, held by the First Trust Company, was concealed from prospective purchasers of the bonds and was not set forth in the prospectus; citing in support of his contention *First Trust Co. v. Carlsen,* 129 Neb. 118, 261 N. W. 333, wherein it was held: "Where it appears that a trustee has practiced concealment, evasion or misrepresentation, thereby depriving the *cestui que trust* of material information relative to the suject-matter of the trust to his injury, the trustee, together with the persons participating in the wrong, may be required to respond in damages." Several supporting authorities are likewise cited.

Appellant further contends: In the case at bar all of the duties and obligations imposed by law and the courts upon fiduciaries are imported into and become vital parts of the contract here involved, under which the trust arises. Appellant's position is best reflected by the following:

"(1) The trustee is under a duty to the beneficiary to administer the trust solely in the interest of the beneficiary.

"(2) The trustee in dealing with the beneficiary on the trustee's own account is under a duty to the beneficiary to deal fairly with him and to communicate to him all material facts in connection with the transaction which the trustee knows or should know." Restatement, Trusts, 431, sec. 170.

Commenting on the foregoing, it is said on page 406, sec. 164, under "h": "Many of the duties of the trustee to the beneficiary are imposed by the terms of the trust, either in words or by other manifestations of the settlor's intent. Some of the duties of the trustee, however, may not be imposed by the terms of the trust, but may arise from the

nature of the relationship. Thus, the existence and extent of the trustee's duty of loyalty to the beneficiary (see sec. 170)."

And, in keeping with such contention, the case of *Nebraska Power Co. v. Koenig,* 93 Neb. 68, 139 N. W. 839, is cited, wherein the court said (p. 77) : "Courts of equity do not set bounds to the principles which control the conduct and fix the accountability of trustees. The elasticity of these rules extends their applicability to all of the devices invented by unfaithful fiduciaries to evade their obligations or to defeat the imperative demands of business integrity and sound public policy."

The soundness of the above authority is unquestioned under proper circumstances, but it is not applicable to the situation here presented. The written instrument constituting the trust, in the instant case, specifically set forth the duties of the trustee, the rights 'of the bondholders, and the rights of the mortgagor, the Shrine Building Association, in clear and unmistakable language. Under such circumstances, the following rules of law apply:

Trustee's powers are such as " (a) are conferred upon him in specific words by the terms of the trust, or (b) are necessary or appropriate to carry out the purposes of the trust and are not forbidden by the terms of the trust." Restatement, Trusts, 475, sec. 186.

The court in *Hazzard v. Chase Nat. Bank,* 159 Misc. 57, 287 N. Y. Supp. 541, said (p. 84) : "The trustee under a corporate indenture, on the other hand, has his rights and duties defined, not by the fiduciary relationship, but exclusively by the terms of the agreement. His status is more that of a stakeholder than one of a trustee." The nature and extent of the duties of the trustee are to be ascertained primarily from the mortgage, rather than from the general law governing trust relationships. So long as the trustee does not step beyond the provisions of the instrument creating the trust and expressly setting forth the duties of the trustee thereunder, and where the terms of the trust agreement are clear, as in the instant case, the agreement,—the first mort-

gage and the bonds,—no obligation or duties in conflict with the express provisions thereof will be implied. See *Hazzard v. Chase Nat. Bank, supra.*

In *Green v. Title Guarantee & Trust Co.,* 227 N. Y. Supp. 252 (223 App. Div. 12) the court held: "Duties which trustee owed to bondholders were fixed by the mortgage provisions, and trustee could not be held liable to bondholders for failure to perform a duty, unless it had agreed to perform it."

The First Trust Company had no interest in the mortgage pledged to the payment of the first mortgage bonds, no interest in the trust *res,* but merely a fiduciary interest against the common debtor.

In *Donnelly v. Consolidated Investment Trust,* 99 Fed. (2d) 185, the court held: "The disability of a trustee against holding an interest in conflict with a trust which he has undertaken is against profiting personally at the expense of his trust."

The trustee's duties and obligations in the case at bar were defined in the contract,—the first mortgage and the bonds. The payments made by the Shrine Building Association were made when no outstanding amounts were due under the first mortgage. There was no default, on the part of the Shrine Building Association, of any of the provisions of the first mortgage agreement or the bonds, at the time the payments were made. The association, under the first mortgage agreement, had the right to the income of the mortgaged property from every source, and the further right to use such income in any manner that it deemed best. In the exercise of such right, the Shrine Building Association made the payments as shown in the opinion.

The written instrument, creating the trust and setting forth the respective rights and duties of the trustee, the mortgagor and the bondholders, is specific and in express and unmistakable language, and admits of the interpretation placed upon it by the trial court.

Other questions raised need not be determined.

AFFIRMED.