ELLEN LINDSAY, APPELLEE, v. WILLIAM B. PALMER, APPELLANT.

FILED FEBRUARY 23, 1899. No. 8713.

Forgery. Evidence examined, and *held* to sustain a finding that a deed was forged.

APPEAL from the district court of Dakota county. Heard below before EVANS, J. *Affirmed.*

*M. B. Davis*, for appellant.

*Jay & Welty*, contra.

IRVINE, C.

Ellen Lindsay brought this action against Palmer, alleging that plaintiff and Mary Jane Lindsay had been the owners of certain described land; that in 1883 a deed purporting to have been executed by them was placed upon record, the deed running to one Summerville; that the defendant claimed through *mesne* conveyances from

Summerville; that in fact plaintiff had never executed or delivered said deed and never authorized its execution. The answer presented an issue as to the forgery of the deed. The district court found for the plaintiff and quieted title in her. The defendant appeals.

The main question is one of fact—the sufficiency of the evidence to sustain the finding that the deed was forged. The plaintiff testified positively that she did not sign the deed, or authorize its signature, and that she knew nothing of its existence until shortly before this suit was begun. Defendant relies on certain cases holding that the presumption of genuineness from the certificate of the acknowledging officer cannot be rebutted by the testimony of the supposed grantor alone. In this case the officer was on the stand as a witness, and we are impelled to quote the essence of his testimony. He had known the grantors for a long time. "I remember some person calling on me to make a deed for the property in question and for the Lindsay girls to Summerville. I knew Summerville as well. I remember that I made the deed—prepared the deed in my office on that request one evening, but did not take the acknowledgment of it until the next morning or day. My impressions are—but I am not clear about that—that it was neither of the grantors that called on me to make the deed, but another person who called at the office."

Q. Do you remember who that person was?

A. No, I do not remember clearly who that was. I remember that I was somewhat solicitous about the matter on account of the impecunious circumstances of the grantee, and wondered whether the girls were getting their money from him. But the next morning I took the deed and went up to this part of town where one of the Orrs lived then, as they always have in the Orr property, to take the acknowledgment of the grantors. I remember very clearly that I did that.

Q. Ellen Lindsay was present at the time?

A. Well, I say she was present, but I say that from

the knowledge I have of my official integrity when I have written it here on this deed, but I cannot say it with absolute certainty from recollection of seeing her as I now see her. But I have no hesitation in saying that she was either there in person or—Well, that is my testimony, that she was there, both of them.

Q. What is or was your practice with reference to the acknowledgment of instruments as you acknowledged that, without the parties having executed the instruments?

A. Well, my practice was that I prided myself somewhat on being very particular about that, with this qualification: Mr. Stott and Mr. Chambers and another one or two, who were dealing somewhat largely in real estate, and I took a good many acknowledgments of their wives, and I did not always do that in that case—or in their cases—that is, go to the wife in each case or have her come to the office to write her name on the deed. But in no case do I believe I ever took an acknowledgment without the grantor signing it in my presence or telling me that they had signed it except in those cases that I have mentioned. And in those cases they told me—the wives had told me to do that thing when their husbands presented deeds for my acknowledgment with their signatures—I knew them well—to not give them that trouble. In other cases I have no recollection of ever allowing myself to do that. I do not believe I ever did it. But this is a long time ago, and I only swear to it with that degree of certainty that human minds will bear reasonably.

On cross-examination the witness was asked: "Had she [the plaintiff] been absent, and Mary Jane present, and she had told you that it was all right, you would have acknowledged the deed? A. Well, that is within the line of possibilities."

We have quoted this for a twofold purpose: First, to show that any presumption from the certificate of acknowledgment was in this case overthrown by the testi-

Union P. R. Co. v. Vincent.

mony of the officer himself, that from complacency, and to avoid causing people trouble, he did habitually with some persons make false official certificates, and that he might have done so in this case if plaintiff's co-tenant had so requested. Further, we quote it in the hope that other officers, seeing the case, may have a juster sense of the responsibilities resting upon them and may avoid a laxity of action in this respect that we fear is not altogether unknown in the state. The evidence not only supports the finding, but it would hardly support any other. The defendant pleads an estoppel, by charging that plaintiff, knowing of the existence of the deed, permitted him and his grantors to purchase from the grantee under the forged deed and to make improvements on the property. The proof is that plaintiff had no knowledge of the existence of the deed until after defendant's rights had accrued, and there is no proof whatever that she knew of the different purchases or of the making of any improvements.

AFFIRMED.