295 N.W.2d 711 (1980)
207 Neb. 44
NATIONAL BANK OF COMMERCE TRUST AND SAVINGS ASSOCIATION, Lincoln, Nebraska, et al., Appellees and Cross-Appellants,
v.
Paul RHODES, Appellant and Cross-Appellee.
No. 42935.
Supreme Court of Nebraska.
August 15, 1980.
*712 Paul Rhodes, pro se.
Fredric H. Kauffman of Cline, Williams, Wright, Johnson & Oldfather, Lincoln, for appellee National Bank of Commerce Trust and Sav. Ass'n.
George Gus Rhodes, Taylor, for appellee Augustine Rhodes.
Heard before KRIVOSHA, C. J., and BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.
PER CURIAM.
This was an action in equity to quiet title to land in Nemaha County, Nebraska, *713 and Perkins County, Nebraska, as against Paul Rhodes. The petition prayed that certain purported conveyances, which also included land in Fremont County, Wyoming, be declared void and the court find that title to the property was vested in the plaintiff bank in trust. Since the action was a suit in equity, it was for trial to the court without a jury. Neb.Rev.Stat. § 25-21,120 (Reissue 1979).
The property in question had been conveyed to the plaintiff bank, in trust, in 1975, by Guy W. Rhodes, now deceased, and Augusta M. Stocker, the owners of record at that time. Augusta M. Stocker is the daughter and sole heir of Gussie R. Stocker, deceased, who was a sister of Guy W. Rhodes.
Guy W. Rhodes, Gussie R. Stocker, and Augusta M. Stocker were committed to the Lincoln State Hospital in December 1955. Petitions were then filed for the appointment of a guardian for them. A controversy arose as to who should be appointed as guardian, Paul Rhodes seeking the appointment of George Rhodes, his father, a cousin of the wards, as guardian. On March 8, 1956, Guy W. Rhodes and Gussie R. Stocker were paroled to the care of Paul Rhodes who took them to Bridgeport, Nebraska. On March 10, 1956, Guy W. Rhodes and Gussie R. Stocker each executed a document authorizing Paul Rhodes to represent them in the guardianship proceedings. Through habeas corpus proceedings commenced on March 15, 1956, Guy W. Rhodes and Gussie R. Stocker were released from the custody of Paul Rhodes on June 5, 1956. The guardianship proceedings were terminated and the guardian ordered to account.
Augusta M. Stocker was released from the state hospital on June 11, 1956. She then went to Denver, Colorado, and did not return to Nebraska until some time after July 16, 1956. The guardianship proceeding concerning Augusta M. Stocker was terminated on August 7, 1956, and the guardian ordered to account.
On February 20, 1957, Paul Rhodes commenced actions against Guy W. Rhodes, Gussie R. Stocker, and Augusta M. Stocker for attorney fees and expenses alleged to be due him. These actions resulted in judgments in favor of Paul Rhodes totaling $12,750 which were paid and satisfied on April 28, 1958.
Gussie R. Stocker died on July 2, 1973. Guy W. Rhodes died on May 12, 1978. After the death of Guy W. Rhodes, Paul Rhodes recorded the deeds which are in dispute in this action.
Exhibit 1 purports to be a warranty deed from Guy W. Rhodes to Augustine Rhodes, the wife of Paul Rhodes, executed on March 10, 1956. Exhibit 2 purports to be a warranty deed executed on the same date from Gussie R. Stocker to Augustine Rhodes. Both deeds reserved a life estate in the lands conveyed to the grantor.
These deeds were not in a customary form but were constructed by attaching a page containing the signatures of the grantors to a page containing the description of the lands conveyed. The evidence establishes without question that the second page of each of the deeds was originally part of separate instruments signed by Guy W. Rhodes and Gussie R. Stocker on March 10, 1956, authorizing Paul Rhodes to represent them in the guardianship proceedings. At the time the instruments were signed, Guy W. Rhodes and Gussie R. Stocker had just been released from the Lincoln State Hospital and were in the custody of Paul Rhodes. It is clear there was no intention to convey any real estate by the instruments authorizing Paul Rhodes to represent Guy W. Rhodes and Gussie R. Stocker in the guardianship proceedings.
Exhibit 3 is a warranty deed purporting to have been executed by G. W. Rhodes, Gussie Stocker, and Augusta Stocker on July 16, 1956, conveying the same property to Augustine Rhodes. Like the March 10, 1956, deeds, exhibit 3 consists of two pages. The description of the property and the granting clauses appear on the first page with only the signatures and the acknowledgment on the second page. The evidence shows that the two pages were not typed at the same time, the signature page *714 appearing to be much older. The origin of the second page is not shown in the record but it is clear that it was originally the lower portion of some other document, the top portion having been removed. The acknowledgment of the deed was before the appellant who, under the circumstances in this case, was an interested party. An acknowledgment before an interested party is void. See Neb.Rev.Stat. § 76-235 (Reissue 1976); Banking House of A. Castetter v. Stewart, 70 Neb. 815, 98 N.W. 34 (1904); Horbach v. Tyrrell, 48 Neb. 514, 67 N.W. 485 (1896). Neb.Rev.Stat. § 64-211 (Reissue 1976), which permits lawyers to take acknowledgments in connection with their "professional activities," did not repeal the provisions of § 76-235 relating to conveyances in which the officer receives an interest in the property.
Exhibit 4 is a warranty deed purporting to have been executed by Augusta M. Stocker on March 21, 1957, conveying the property to Augustine Rhodes. The acknowledgment on this deed was also before Paul Rhodes.
Exhibits 5 and 6 are quitclaim deeds purporting to have been executed by Augustine Rhodes on January 10, 1973, and November 18, 1977, conveying the property to Paul Rhodes.
The trial court found that the deeds described as exhibits 1, 2, 3, and 4 were void; that these deeds were not the voluntary act of the grantors; that there was no delivery of the deeds and there was no consideration for them; that exhibits 1, 2, and 3 were fabrications; there was strong evidence that exhibit 4 was a forgery; and that in 1956 and 1957 Paul Rhodes had a confidential relationship with the grantors and exerted undue influence upon them.
With respect to exhibits 5 and 6, the trial court found the deeds were void because the grantors had no interest in the property described in the deeds. Title to the property described in the petition was quieted in the plaintiff bank in trust. Paul Rhodes is the sole appellant.
We think the evidence as a whole sustains a finding that all six deeds were void. Exhibits 1, 2, and 3 are obvious fabrications. Augusta M. Stocker denied that she signed exhibit 4 and the testimony of the plaintiff's expert witnesses supported this conclusion. The deed purports to have been executed at a time when the grantor had no interest in most of the property described in the deed, and at a time when she was being sued by the appellant for attorney fees.
Augustine Rhodes, the grantee in exhibits 1, 2, 3, and 4, claims no interest in the property and denies that the deeds were ever delivered to her or accepted by her. She admits signing exhibit 6 but testified she did not own the property and the deed was intended only as a release of any interest she might have had in property the appellant had received from his relatives. She denies that she executed exhibit 5.
The appellant argues that the real estate tax transfer statement which was filed at the time exhibit 3 was recorded in Nemaha County, Nebraska, indicates Augustine Rhodes accepted delivery of the deed and intended it to be effective. Augustine Rhodes denies that she executed or filed any real estate tax transfer statement in connection with the disputed deeds and the signature that now appears on the copies of the statement which are in evidence does not appear to be her signature. One of the plaintiff's expert witnesses testified the signature was not genuine. Both the county clerk and the deputy county clerk of Nemaha County were present when Paul Rhodes filed exhibit 3 in Nemaha County. They testified that Paul Rhodes signed the tax transfer statement in their presence.
The appellant contends that the deeds were valid because they were ratified later by the grantors. The record does not support this contention. In an effort to bolster the March 10, 1956, deeds, the appellant produced an affidavit of Odaville Yates, the notary public before whom the attorney authorization instruments were acknowledged. However, a subsequent sworn statement of Yates produced by the plaintiff established that the affidavit was incorrect.
*715 Similarly, the appellant produced an affidavit denominated "proof of acknowledgment" executed on September 24, 1976, by Eugene Hanway, an alleged witness to the July 16, 1956, deed. Hanway testified by deposition and his testimony shows his affidavit was not based upon personal recollection but was based only upon his examination in 1976 of the 1956 deed.
The appellant further contends the trial court erred in failing to find that the action was barred by the statute of limitations. The appellant argues that the cause of action accrued at the time the deeds were executed and the action was barred at the time it was commenced. The answer to this contention lies in the fact the evidence shows the deeds in question, exhibits 1, 2, 3, and 4, were fabrications. There were no deeds executed in 1956 and 1957 and there was nothing to put the plaintiff on notice of any claim based upon these deeds until they were recorded commencing in 1978. As soon as the deeds were placed on record, the plaintiff commenced an investigation to ascertain the facts and then commenced this action.
At the trial, the appellant, Paul Rhodes, testified that he personally saw the grantors deliver the deeds, exhibits 1, 2, and 3, to Augustine Rhodes by handing them to her. In his motion for new trial the appellant alleged as newly discovered evidence a power of attorney granted to him by his wife, Augustine Rhodes, in July 1955. The appellant now attempts to claim the deeds were delivered to him as agent for Augustine Rhodes.
A power of attorney which the appellant had received 25 years before would not be newly discovered evidence. And since the case was tried on the theory that the deeds had been delivered to Augustine Rhodes in person by the grantors, the appellant will not now be allowed to develop a new theory of the facts contrary to that urged and testified to by him at the trial. Cases are heard and determined in this court upon the theory upon which they were tried in the District Court.
A litigant who knowingly and deliberately assumes a particular position in a judicial proceeding is generally estopped to take a position inconsistent therewith to the prejudice of an adverse party. Ainsworth Irr. Dist. v. Bejot, 170 Neb. 257, 102 N.W.2d 416 (1960).
The prayer of the petition also sought recovery of all costs and expenses incurred by the plaintiff in maintaining the action. The trial court denied any monetary recovery to the plaintiff other than costs including an expert witness fee in the amount of $1,000. By cross-appeal, the plaintiff contends it should be allowed to recover costs and expenses in the amount of $83,160.14 against the appellant.
In the absence of a statute or a uniform course of procedure, a party may not recover the costs and expenses incident to litigation. See Toop v. Palmer, 108 Neb. 850, 189 N.W. 394 (1922). Although strong equities exist in favor of the plaintiff in this case, we believe the decision of the District Court as to this issue was correct.
It is unnecessary to consider the other contentions of the appellant.
The judgment of the District Court is affirmed.
AFFIRMED.