JOHN M. BURK ET AL., APPELLANTS, V.
MARILYN M. DEMARAY ET AL., APPELLEES.
646 N.W.2d 635

Filed July 5, 2002.   No. S-01-395.

James G. Egley, of Moyer, Moyer, Egley, Fullner & Warnmunde, for appellants.

James D. Gotschall, of Strope, Krotter & Gotschall, P.C., for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

This is an appeal from a district court's order quieting title in the appellees, Gary Bartak and Mary Bartak (the Bartaks) to a quarter section of farmland in Holt County, Nebraska. Appellants John M. Burk (John), Barbara A. Burk King (Barbara), and her husband, Robert L. King (Robert) (collectively the Burk heirs), filed a petition asking the court to quiet title in them to their four-ninths interest in the property. The court found that the Bartaks were the owners of the property through adverse possession and dismissed the Burk heirs' petition with prejudice. The Bartaks obtained title from Marilyn M. Demaray (Marilyn), and her husband, Louis Eugene Demaray (Gene) (collectively the Demarays).

The Burk heirs alleged that deeds purporting to convey John and Barbara's property interests to their mother, Marilyn, were forged. Marilyn died before the hearing.

The trial court found that the Bartaks were entitled to summary judgment based on adverse possession regardless of whether the deeds were forged. We determine that there are genuine issues of material fact whether the deeds were forged and

that the parties' rights cannot be determined until the forgery issue is decided. We reverse, and remand for further proceedings.

## BACKGROUND

On March 22, 2000, the Burk heirs filed suit to quiet title against the Demarays, the Bartaks, and all other persons claiming an interest in the property. They alleged that John and Barbara had inherited their interests while they were minors and had never been told of their inheritance. They also alleged that their interests were fraudulently conveyed to Marilyn through forgeries and that the Demarays had then conveyed the property to the Bartaks. They prayed for the court to quiet title in them for their combined four-ninths interest and provide any further relief as equity may require.

Gene filed an answer in which he generally denied the allegations. The Bartaks, in their amended answer and counterclaim, alleged that they were innocent good faith purchasers for value. They also alleged that they had become the owners of the property because they and their predecessors in title had maintained an actual, continuous, notorious, and adverse possession of the real estate for a period of 10 years. Finally, they alleged that the claimed forged deeds had been recorded for more than 22 years before the filing of the petition and that they were therefore entitled to rely upon the validity of the deeds under Neb. Rev. Stat. §§ 76-258, 76-288, and 76-289 (Reissue 1996). They also asked that the court quiet title in them.

The Bartaks moved for summary judgment asserting that they were entitled to judgment as a matter of law under Nebraska's curative statutes and adverse possession. The evidence submitted at that hearing showed the following facts:

John and Barbara are the surviving children of Marilyn and Patrick J. Burk (Patrick). Their sister, Linda LaRue (Linda), died in the 1980's. Patrick died intestate in May 1961. The final decree in the probate proceeding for his estate gave each of his three minor children a two-ninths interest in a quarter section of property that Patrick had acquired in 1959. John was about 9 years old when Patrick died, and Barbara was 4 years old.

In February 1978, two quitclaim deeds were filed with the register of deeds in Holt County. The first deed was signed and

notarized in November 1972 and conveyed Barbara's interests in the property to Marilyn, who was then Marilyn Petersen. Barbara was 19 years old at that time. The second deed was signed and notarized on February 27, 1978, the same day that both of the deeds were recorded. The second deed conveyed the interests of John and Linda and their spouses to Marilyn, who was then Marilyn Demaray. Both conveyances were made "in consideration of LOVE, AFFECTION AND ONE DOLLAR."

At some point after 1978—the deed is not in the record—Marilyn, alone or with Gene, sold the property to Schmiser Farms, Inc. (Schmiser). According to Barbara, Schmiser filed for bankruptcy and deeded the land back to the Demarays. The record does contain a quitclaim deed, dated March 1, 1984, in which Schmiser conveyed the property back to the Demarays for $1. The Bartaks stated in affidavits that in March 1989, the Demarays began leasing the property to them. The Demarays conveyed the property to the Bartaks in a warranty deed for $150,000, which was signed and dated March 28, 1990. The Bartaks made their last payment to Marilyn in 1999 and recorded the deed in April 1999. John and Barbara both testified that they knew that Marilyn had sold the property to the Schmisers and the Bartaks.

In 1999, Marilyn became ill and spent several weeks in the hospital. She needed nursing home care, and in July, while she was still hospitalized, she asked some of her family members to go through her personal papers to look for documentation that she might need. Barbara, Barbara's daughter, and Marilyn's brother went to her home in Grand Island for that purpose. It was during this search that they discovered copies of the quitclaim deeds purporting to convey the children's property interests to Marilyn. Marilyn's brother gave a copy of the deed to John.

John testified that Marilyn had never asked him to convey his ownership interests to her. In October 1999, John went to the courthouse to do research after Marilyn's brother gave him a copy of the deed. He discovered that he, Barbara, and Linda had each received a two-ninths interest in Patrick's property and that the quitclaim deeds had been recorded. The record reflects that a guardian ad litem was appointed for the children in Patrick's probate proceeding. John and Barbara testified, however, that

they had been unaware of the appointment, that no one had told them of their ownership interests, and that they had no knowledge of their interests before July 1999. John stated that until that time, he and Barbara had assumed the property had been left to Marilyn.

Dorothy Sojka, the notary public who notarized the 1972 quitclaim deed purportedly conveying Barbara's interests to Marilyn testified by deposition. Although she did not remember the deed, she remembered that Marilyn and Barbara came into the bank where she worked to have the deed notarized. The notary seal is not clearly legible, but she stated that her seal might not have penetrated. She stated that she had known Marilyn for 30 to 40 years and, therefore, did not check her identity with a driver's license. She admitted that she might not have known Barbara on sight at that time, and she did not state that she asked Barbara for identification.

Florence Ponton, the notary public who notarized the 1978 quitclaim deed, died before this action was commenced. John stated that he had known Florence well because she prepared his tax returns for many years, but he did not know her signature. He did not know of any reason that would account for her notarizing a signature that was not his.

Barbara testified that her signature on the 1972 quitclaim deed was a forgery. John testified that he knew the handwriting of the other people who purportedly signed the 1978 quitclaim deed and that his signature and the other signatures were forgeries. John's ex-wife also testified that her signature and the other signatures on the 1978 deed were forgeries. John and Barbara both believed that Marilyn had forged the deeds.

Neither John nor Barbara confronted Marilyn about the deeds. Barbara testified that she asked Marilyn about her financial status numerous times, but Marilyn would never discuss these matters. John stated that he had not been on speaking terms with Marilyn for 3 to 4 years before her illness. Marilyn died on June 16, 2000. The record does not reflect the content of a will or probate of her estate.

After the hearing, the court rendered its judgment in a written interlocutory order. The court found that the Bartaks conceded that there was a genuine issue of fact whether the 1972 and 1978

quitclaim deeds were forged and that, therefore, they could prevail only if they were entitled to judgment despite any forgeries. The court found that under § 76-288, to extend the chain of title back the required 22 years, the fraud claims had to be considered. Because claims of marketable record title are subject to claims or defects of title based on fraud, the court determined that § 76-288 provided no basis of relief for the Bartaks. The court further found that a forged deed could not be cured under § 76-258 because it was not a " 'defect, irregularity or omission.' " The Bartaks have not cross-appealed on these issues.

Finally, the court considered the Bartaks' claim of adverse possession. The court found that the Bartaks were bona fide purchasers for value without notice of the forgeries. The court further found that the Bartaks had satisfied all of the requirements for adverse possession since the time they became owners of the property on March 28, 1990. Because the petition was filed on March 22, 2000, however, the court found that the time of possession was short of the statutory period of 10 years. The court found, however, that the Bartaks were entitled to tack their possession to the Demarays' possession, as their predecessors in title.

Because John and Barbara admitted that they knew Marilyn had sold the property to Schmiser, the court found that the sale constituted an ouster sufficient to put them on notice of Marilyn's hostile possession. Although the deed evidencing the date of the sale to Schmiser was not in the record, the deed conveying the property back to the Demarays on March 1, 1984, was recorded and in the record. The court concluded that John and Barbara were given constructive notice of the hostile character of Marilyn's possession as of that date.

The court found that under Nebraska law, cotenants' ignorance of their property rights would not prevent the statute of limitations from running when they had actual or constructive knowledge of an ouster, in the absence of fraudulent concealment or misrepresentation. The court found that viewed in the light most favorable to the Burk heirs, there was no genuine issue as to any material fact regarding fraudulent concealment or misrepresentation. The court reasoned that because both John and Barbara had attained the age of majority when the alleged forgeries were committed, "whatever duty Marilyn might have owed to a minor

child had terminated. Thus, Marilyn had no duty to disclose the children's ownership interest." Because she had no duty to disclose their ownership interests, the court found that the evidence did not show concealment. The court also found that John and Barbara did not show that Marilyn had made any fraudulent misrepresentations to them regarding their interests. Under these facts, the court concluded that "Nebraska law, through the concept of adverse possession . . . values the defendants' rights over the wrong allegedly done to the plaintiffs."

The court dismissed the petition as to all defendants. After the Bartaks entered a motion to voluntarily dismiss their counterclaim without prejudice, a final order was entered quieting title to the property in the Bartaks. The Burk heirs appealed.

## ASSIGNMENTS OF ERROR

The Burk heirs assign, restated and condensed, that the district court erred in (1) determining that the period of possession by the Demarays could be tacked to the period of possession by the Bartaks to satisfy the requirements for adverse possession, (2) finding that there was no evidence of fraudulent concealment by Marilyn because she had no duty to disclose her adult children's inheritance from Patrick, and (3) failing to find that the governing statute of limitations was Neb. Rev. Stat. § 25-207(4) (Reissue 1995) instead of Neb. Rev. Stat. § 25-202 (Reissue 1995).

## STANDARD OF REVIEW

A quiet title action sounds in equity. *Caruso v. Parkos*, 262 Neb. 961, 637 N.W.2d 351 (2002). In an appeal of an equitable action, an appellate court tries factual questions de novo on the record, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Reisig v. Allstate Ins. Co., ante* p. 74, 645 N.W.2d 544

(2002). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## ANALYSIS

The Burk heirs contend that the period of possession by the Demarays could not be tacked to the period of possession by the Bartaks to satisfy the 10-year time requirement for adverse possession. They argue that tacking should not be permitted because the Demarays' possession was predicated upon fraudulent concealment, misappropriation, and forgery.

■ The Bartaks conceded at the hearing that there were genuine issues of fact whether the signatures were forged. Although only the Burk heirs adduced evidence on the issue of forgery, there is a presumption favoring the validity of notarized deeds which creates an issue of fact to be resolved.

> " ' "Public policy forbids that deeds and mortgages of real estate, duly authenticated in the mode pointed out by statute, should be set aside except upon clear and convincing proof that the certificate of acknowledgment is false. The presumption is in favor of the certificate, and the burden is upon the party alleging such a defense to prove it." . . .' "

*Gaeth v. Newman*, 188 Neb. 756, 766, 199 N.W.2d 396, 403 (1972); *Kucaba v. Kucaba*, 146 Neb. 116, 18 N.W.2d 645 (1945).

■ The court correctly determined that a forged deed is void and will not pass title for any purpose. See, *Nat. Bank of Commerce Trust & Savings Assn. v. Rhodes*, 207 Neb. 44, 295 N.W.2d 711 (1980); *Lindsay v. Palmer*, 58 Neb. 168, 78 N.W. 371 (1899). This is true not only as to the grantee, but also to those who take under the grantee. See *Martin v. Harvey*, 89 Neb. 173, 130 N.W. 1039 (1911) (affirming directed verdict for defendant in ejection action when evidence was sufficient to show forged deed in plaintiff's chain of title). In general, courts hold that a forged deed will not pass title even to an innocent, good faith purchaser for value. See, e.g., *Wutzke v. Bill Reid Painting Service, Inc.*, 151 Cal. App. 3d 36, 198 Cal. Rptr. 418 (1984); *Moore v. Smith-Snagg*, 793 So. 2d 1000 (Fla. App. 2001); *VanderWall v Midkiff*, 166 Mich. App. 668, 421 N.W.2d

263 (1988); *Prater v. Prater*, 208 Miss. 59, 43 So. 2d 582 (1949); *Yin Wu v. Wu*, 288 A.D.2d 104, 733 N.Y.S.2d 45 (2001). See, also, 14 Richard R. Powell & Michael Allan Wolf, Powell on Real Property § 82.02[1][e][i] (2002) (forged deeds are an exception to the general rule that good faith purchasers are protected by recording acts from claims of which they have no notice); 23 Am. Jur. 2d *Deeds* §§ 162 and 164 (2002).

The court, however, found that the Bartaks were entitled to summary judgment even if the deeds were forged based on the tacking of the Demaray's possession. But this conclusion is not correct if the deeds were forged, which—in this case—presents a genuine issue of material fact.

■ The court correctly determined that the Bartaks' period of possession before this action was commenced was 7 days short of the 10-year statutory period. See *Wanha v. Long*, 255 Neb. 849, 587 N.W.2d 531 (1998). The court found, however, that the Bartaks were entitled to tack their possession to the Demarays' possession as their predecessors in title. For the Bartaks to tack their period of possession to the Demarays' possession, the Demarays' possession must have been adverse to John and Barbara also. See *Bartlett v. Kloepping*, 195 Neb. 755, 240 N.W.2d 592 (1976).

The court found that Marilyn's sale of the property to Schmiser constituted an ouster sufficient to put John and Barbara on notice of the hostile character of Marilyn's possession. Thus, the court found that Marilyn's possession was adverse against her adult children as cotenants, from the earliest date in the record evidencing that conveyance. That date was March 1, 1984, when Schmiser deeded the property back to the Demarays. But if Marilyn had forged the deeds, then she obtained no rights to John and Barbara's property interests, and her conveyance to Schmiser could not convey their interests. See *Martin v. Harvey, supra.*

■ Also, a party claiming title through adverse possession must prove by a preponderance of the evidence that the adverse possessor has been in (1) actual, (2) continuous, (3) exclusive, (4) notorious, and (5) adverse possession *under a claim of ownership* for the statutory period of 10 years. *Wanha v. Long, supra.* Marilyn could not assert a claim of ownership against her children if she had defrauded them of their property interests.

A possessor may be mistaken in a claim of ownership. *McCain v. Cook*, 184 Neb. 147, 165 N.W.2d 734 (1969). Title may be acquired by adverse possession though the claim of ownership was invalid and the occupant believed he was asserting only legal rights. See *Wanha v. Long, supra.* But "it is the visible and exclusive possession with intention to possess the land occupied *under the belief that it belongs to him* that constitutes its adverse character." (Emphasis supplied.) *Id.* at 860, 587 N.W.2d at 540. If the possessor commits fraud against the true owner to obtain title, he or she has no belief that the property belongs to him or her. Thus, the possessor has no claim of right or ownership against the true owner unless the owner has reason to know of the possessor's malfeasance and fails to take action to protect his or her interests. See *Bell v. Dingwell*, 91 Neb. 699, 136 N.W. 1128 (1912) (requiring mother and her husband to account to her adult children for fraudulently obtaining deed in her name only and omitting children's interests in their deceased father's estate when children did not discover the fraud until 4 years after the youngest child reached age of majority and despite mother's claim of adverse possession).

Further, if Marilyn forged the deeds, her fraudulent conduct would result in the imposition of a constructive trust. See *Waite v. Cornette*, 259 Neb. 850, 856, 612 N.W.2d 905, 911 (2000) ("constructive trust is imposed when one has acquired legal title to property under such circumstances that he or she may not in good conscience retain the beneficial interest in the property"). Cotenancy alone does not create a fiduciary relationship as to the property owned by the cotenants; but if one cotenant has possession of property or funds belonging to the other cotenant, he or she becomes trustee thereof and stands in fiduciary relationship to a cotenant with respect thereto to the extent of the interest of the cotenant who may compel an accounting. *Hafeman v. Gem Oil Co.*, 163 Neb. 438, 80 N.W.2d 139 (1956).

As a constructive trustee, she could not possess the property adverse to her children's interests unless they had reason to know of her conduct and failed to take action to protect their interests. See *Waite v. Cornette, supra.* See, also, *Adams v. Adams*, 512 So. 2d 1150 (Fla. App. 1987) (cotenants' fraudulent scheme to obtain title through tax sale resulted in constructive trust for other

cotenants); *Tanner v. Tanner,* 698 S.W.2d 342 (Tenn. 1985) (father who fraudulently obtained deed to property he had previously conveyed to his ex-wife in dissolution for benefit of his children became constructive trustee and could not hold adverse to his children's interests despite his open declaration to do so). Compare *Giacomini v. Giacomini,* 163 Neb. 798, 807, 81 N.W.2d 194, 199 (1957) ("'a personal representative who takes possession of property in his fiduciary capacity is generally estopped to deny the title of his decedent or to set up an adverse title to the injury of those beneficially interested in the estate'").

Proof of Marilyn's actual fraud would negate the adverse character of her possession against her children. Thus, the Bartaks could not tack their period of possession to the Demarays' possession.

In light of this holding, we need not discuss the Burk heirs' remaining assignments of error.

## CONCLUSION

We conclude that the district court erred in granting summary judgment to the Bartaks on their claim of adverse possession when the Bartaks could not satisfy the statutory period for adverse possession without tacking to the Demarays' possession. Because genuine issues of material fact exist on whether the quitclaim deeds filed with the register of deeds in 1978 were forged and the court made no findings regarding the forgeries, we reverse, and remand for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.