CITY OF HASTINGS, APPELLEE, V. JERRY SPADY PONTIAC-CADILLAC, INC., A CORPORATION, APPELLANT.

322 N.W.2d 369

Filed July 16, 1982. No. 43958.

Thomas J. Mullen of Whelan, Foote & Scherr, P.C., for appellant.

M. J. Bruckner and W. Scott Davis of Marti, Dalton, Bruckner, O'Gara & Keating, P.C., for appellee.

Heard before BOSLAUGH, MCCOWN, and CLINTON, JJ., and HAMILTON and CASE, D. JJ.

HAMILTON, D.J.

This is an action brought by the appellee, City of Hastings, in equity to impress a constructive trust upon real property purchased by appellant, Jerry Spady Pontiac-Cadillac, Inc., from the Missouri Improvement Company, a subsidiary of Missouri Pacific Railroad Company. The District Court found generally for the City of Hastings and imposed a constructive trust.

During 1977 and part of 1978 Duane Stromer was city attorney for the City of Hastings, and during said period was also attorney for Jerry Spady Pontiac-Cadillac, Inc.

In 1976 the planning director for the City of Hastings began the development of the Hastings comprehensive plan. As part of this plan it was contemplated that F Street would be extended along property owned by the Missouri Pacific Railroad Company, but no longer used as railroad right-of-way. This extension of F Street was a material part of the comprehensive plan, since it would provide the city with its only major thoroughfare crossing the city from east to west in the south part of town.

The extension of F Street was clearly shown on the

comprehensive plan that was submitted to the Hastings Planning Commission in March of 1977, which was attended by Duane Stromer in his capacity as city attorney. It became obvious at this point in time that the acquisition of the abandoned railroad right-of-way by the City of Hastings was an absolute necessity to accomplish the intent and purposes of the comprehensive plan insofar as it applied to the extension of F Street.

The records of the Missouri Pacific Railroad Company reflect that the first contact by Duane Stromer with the company was on July 12, 1977, when Stromer advised the company that he was city attorney for the City of Hastings and that he was inquiring whether or not the company would sell the abandoned property to the city for a street. Duane Stromer maintains his first contact with the Missouri Pacific was on April 2, 1977, when he made inquiry on his own behalf. City officials were unaware of these activities and had never authorized Stromer to negotiate for the purchase of the property.

During the same period of time the city planning director had made contact with Missouri Pacific officials and expressed the city's interest in obtaining the abandoned right-of-way for street purposes. On July 21, 1977, the director informed the city engineering committee of the city's need to acquire the property and the willingness of the Missouri Pacific to sell. The minutes of this meeting were provided to the mayor and members of the city council.

In August of 1977 Duane Stromer made a written offer to purchase the property for $6,890, which was rejected. In correspondence to the Missouri Pacific on September 6, 1977, Stromer advised the Missouri Pacific that the City of Hastings was not interested in purchasing the property because a decision had been made not to put a street through in that area. Stromer further advised that his offer was made

personally without regard to the City of Hastings. The record reflects this to be a deliberate falsehood, for at the very same time the city planning director was, with city approval, obtaining appraisals so as to submit an offer of purchase to the Missouri Pacific.

On September 21, 1977, by letter, Stromer accepted an offer of the Missouri Pacific and agreed to pay $10,900 for the property. On September 22, 1977, the engineering committee of the city council held a meeting. The F Street property was on the agenda. Duane Stromer requested of the committee chairman that he be put on the agenda. At the meeting Stromer informed the committee that he had acquired the property and that he would be willing to transfer the property to the city for what he had in it, which was stated to be approximately $20,000.

It was at this point that the city council first learned of Stromer's conduct and an apparent conflict of interest. The mayor discussed the matter with Stromer and then advised the council that Stromer had agreed to get out of the transaction and to allow the city to proceed with its acquisition of the property.

On October 12, 1977, Stromer wrote to the Missouri Pacific and made the following statement: "Apparently, the City of Hastings, Nebraska is now interested in purchasing the said land which I did not know about at the time we began negotiations in April. To avoid any possible conflict, I must withdraw my offer to purchase the said land."

Before the letter arrived Mr. Henderson of the Missouri Pacific received a telephone call from Stromer advising him to disregard the letter when he received it. Stromer further advised Mr. Henderson that the deal was still on and he wanted the deed to be issued to the Bonnavilla Plaza Corporation. This corporation was wholly owned by Jerry Spady.

During November and December Stromer had advised the Missouri Pacific he was checking the title and that the money would be sent as soon as the title check had been completed. The City of Hastings, during this period, had completed appraisals on the property and had agreed to offer the Missouri Pacific the sum of $18,000. The matter was placed on the agenda for the city council meeting of January 9, 1978. The motion to offer the $18,000 was passed on said date. On that same date Stromer obtained a check from Jerry Spady Pontiac-Cadillac, Inc., in the amount of $10,900 and forwarded the check to the Missouri Pacific, requesting that the property be deeded to Jerry Spady Pontiac-Cadillac, Inc., which was done, and the deed was mailed to Stromer on February 8, 1978.

At no time prior to or during the January 9 city council meeting did Stromer mention to the city council what his current activities were with regard to the property. The city learned of the sale on March 6, 1978, in a letter from the Missouri Pacific, which stated: "Last August we received a letter from Duane L. Stromer, Attorney of Hastings, Nebraska, making a bid for the property and in a telephone conversation with him immediately thereafter, we were led to understand that he was part-time attorney for the City of Hastings and the purpose of obtaining this property was for street right of way purposes in order to insure the permanent establishment of F Street west of Burlington.

"Upon receipt of your letter, I investigated and find that Mr. Stromer, in contact with our St. Louis offices, requested that the title to the property on the deed be conveyed to Jerry Spady Pontiac-Cadillac, Inc. and the consideration of $10,900.00."

Upon receipt of this letter the City of Hastings first learned that Stromer had not withdrawn from the conflict of interest problem and, upon request by

city officials, Stromer resigned as city attorney on April 8, 1978.

The record reflects that at no time had the City of Hastings ever authorized Duane Stromer to negotiate on its behalf, nor had the city any knowledge that Stromer was representing to others that he was negotiating on its behalf.

Duane Stromer and Jerry Spady, president of appellant corporation, denied knowing that the city was interested in the property. Stromer contends that his interest was for personal investment and the possibility of building duplexes on the property. Spady indicates that Stromer approached him some 2 or 3 months before he purchased the property and informed him that the city was no longer interested in the property and proposed that he and Spady purchase the property on an equal share basis as an investment. Thereafter, Stromer could not afford to financially participate and Spady undertook the purchase on his own.

It is interesting to note that after the purchase Jerry Spady in negotiations with city officials, who were still interested in acquiring the property for the City of Hastings, indicated that the property had a value of $80,000.

The appellant assigns error that can be summarized by stating that the trial court's findings are not sustained by sufficient evidence and that the trial court's findings are contrary to law.

This appeal of an equitable action is reviewable de novo by this court, bearing in mind that the trial court had the opportunity to observe the witnesses and their manner of testifying and therefore was in a better position to determine the credibility of the evidence and the weight to be accredited thereto. *Baker v. Buglewicz,* 205 Neb. 656, 289 N.W.2d 519 (1980).

It is fundamental law that an attorney must not while representing a client do anything knowingly

that is inconsistent with the terms of his employment or contrary to the best interests of his client. "An attorney is by virtue of his office disqualified from representing interests which are adverse in the sense that they are hostile, antagonistic, or in conflict with each other." 7A C.J.S. *Attorney & Client* § 150 at 206 (1980).

The facts in the record show that all negotiations with the Missouri Pacific for the purchase of the property in question were conducted by Duane Stromer representing to the sellers that he was representing the City of Hastings, himself, or the appellant. At all times during said negotiations Duane Stromer had actual knowledge that his employer, the City of Hastings, was interested in and intended to purchase the subject property. Duane Stromer, as city attorney, had a fiduciary duty to his employer not to act in a manner inconsistent with the employer's best interests. Clearly the action of Duane Stromer to actively participate in the acquisition of property either for himself personally or for a third-party client, when he had actual knowledge that his employer was not only interested in purchasing the property but considered it a necessity to accomplish the intent and purpose of the employer's comprehensive plan, was a breach of his fiduciary duty to his employer.

An attorney cannot purchase or negotiate for an interest in land in which his own client is interested. *Olson v. Lamb,* 56 Neb. 104, 76 N.W. 433 (1898); *James v. McNair,* 164 Neb. 1, 81 N.W.2d 813 (1957).

The breach of fiduciary duty having been so clearly established, the City of Hastings was required to show only that Jerry Spady Pontiac-Cadillac, Inc., was not a bona fide purchaser for value. The trial court must have concluded that appellant had either actual or constructive knowledge of the City of Hastings' equitable claim to the property. The record before us requires such a finding. The letter of

Duane Stromer to the Missouri Pacific on October 12, 1977, specifically refers to the City of Hastings' interest in the property, and although actual knowledge is not necessary, it is inconceivable that with the close personal association of Duane Stromer with Jerry Spady, as reflected in this record, appellant did not have actual knowledge of the equitable claim of the City of Hastings. Jerry Spady had actual knowledge that Duane Stromer was representing the City of Hastings and at the same time representing him.

It is clear that notice to, or knowledge of facts by, an attorney is notice to, or knowledge of, his client. 7A C.J.S. *Attorney & Client* § 182 (1980).

The actual knowledge of Duane Stromer of the city's interest in that property is imputed to his client, appellant herein, and that knowledge and notice of Stromer's breach of fiduciary duty negates any claim of being a bona fide purchaser for value by the appellant.

A bona fide purchaser exists where the purchaser takes without knowledge or notice of any suspicious circumstances which would put a prudent man upon inquiry. *Love v. Fauquet,* 184 Neb. 250, 166 N.W.2d 742 (1969); *Hein v. W. T. Rawleigh Co.,* 167 Neb. 176, 92 N.W.2d 185 (1958).

Where, as here, the titleholder of real estate takes title to property with actual or constructive knowledge of the breach of a fiduciary duty by an attorney to his client amounting to fraud, the court will impose a constructive trust upon the titleholder and require that title be transferred to the defrauded party.

A constructive trust will be imposed against those who knowingly aid or participate in a breach of trust. *Schepers v. Lautenschlager,* 173 Neb. 107, 112 N.W.2d 767 (1962). To rule otherwise would permit wrongdoers to be unjustly enriched or otherwise benefit parties who have obtained property with ac-

tual or constructive knowledge of the fraudulent actions of their agent in acquiring the property.

The action and judgment of the trial court was correct and the judgment is affirmed.

AFFIRMED.