IN RE ESTATE OF THOMAS J. READING, DECEASED.
PAULA SPEAR AND KATHERINE READING, APPELLANTS,
V. NORWEST BANK NEBRASKA, N.A., APPELLEE.
626 N.W. 2d 595

Filed June 1, 2001.   No. S-00-238.

Thomas K. Harmon, of Respeliers and Harmon, P.C., for appellants.

William E. Seidler, Jr., of Seidler & Seidler, P.C., for appellee.

HENDRY, C.J., WRIGHT, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

In closing the estate of Thomas J. Reading, deceased, the county court for Douglas County ordered the personal representative to transfer five promissory notes from the estate to a revocable trust which was in existence at the time of Reading's death. Paula Spear, one of Reading's two surviving adult children and the maker of the promissory notes, and Katherine Reading (Katherine), his surviving spouse, perfected this timely appeal from that order. Spear and Katherine argue that the notes were not assets of the estate because an action upon them would be barred by the applicable statute of limitations and that the notes therefore should have been canceled. We moved this case to our docket pursuant to our authority to regulate the dockets of the appellate courts. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## BACKGROUND

On October 3, 1995, Connie Distransky, the other surviving child of Reading, filed a petition for probate, determination of heirs, and appointment of a personal representative in the county court for Douglas County. In her petition, Distransky alleged that Reading died testate on September 22, 1995, while domiciled in Douglas County. Distransky nominated Norwest Bank Nebraska, N.A. (Norwest), to serve as personal representative of the estate, noting that Norwest currently served as the trustee of the "Thomas and Katherine Lee Reading" trust. This trust held the bulk of the assets of Reading and Katherine, who was alleged to be "under guardianship in Indiana." The petition identified Spear as the guardian. The petition recites that a will dated October 3, 1984, was filed with the court and offered for probate, but the will does not appear in the record on appeal. On October 31, 1995, the county court entered an order declaring the will to be valid and admitting it to probate; determining the heirs to be Katherine, Distransky, and Spear; and appointing Norwest as personal representative of the estate.

The personal representative filed an "Amended Inventory and Appraisement" on September 20, 1996, which listed five promissory notes on which Spear was a maker or comaker as assets of the estate. The notes were dated between 1977 and 1983 and were listed on the amended inventory as having a value at date of death in the total amount of $52,044.61. The estate was shown as the sole owner of two of the notes, and Katherine was shown as a "co-tenant" with the estate on the remaining three notes.

The personal representative filed a "Petition for Determination of Inheritance Tax" on July 8, 1997. This petition refers to a "settlement agreement" dated December 2, 1994, a copy of which is attached to the petition. The settlement agreement, entered into by Reading's attorney in fact, Distransky, Spear, and a guardian ad litem appointed for Katherine, recites that it is intended to resolve disputed claims and issues among the Reading family members regarding the formation and validity of various powers of attorney and trusts. To carry out the settlement, a new trust designated as the "Thomas J. Reading and Katherine Lee Reading Revocable Trust" was formed on or about the same date that the settlement agreement was executed, naming Norwest as trustee. Under the terms of this trust, all assets of Reading and Katherine were to be delivered to the trustee. During their lifetimes, Reading and Katherine were to receive all trust income and so much of the principal as necessary to provide for their support, in the sole discretion of the trustee. The trust instrument provided that upon the first death, trust assets would be divided into separate trusts known as the "Decedent's Trust" and the "Survivor's Trust." All income of the decedent's trust and so much of the principal as the trustee determined to be necessary to provide for the support of the survivor was to be distributed to the surviving spouse during his or her lifetime. Upon the death of the surviving spouse, both trusts were to terminate and the trustee was to distribute assets to Distransky and Spear or their issue, per stirpes. The petition for inheritance tax determination states in part with respect to the trust:

> In making the inheritance tax determination, the Trustee has calculated that Katherine Reading has an ownership interest in one-half of the assets . . . of the Survivor's Trust

and one-half of the assets of the Decedent's Trust. She also has a life estate in one-half of the assets of the Survivor's Trust and one-half of the assets of Decedent's Trust by virtue of the death of Thomas Reading. The remainder persons of both trusts are Connie Distransky and Paula Spear, children of Thomas and Katherine Reading.

No order determining inheritance tax appears in the record. However, a "Final Report" filed by the personal representative on April 21, 1998, reflects an inheritance tax payment to Douglas County in the amount of $1,724.46.

On January 9, 1998, the personal representative filed an "Application for Instructions" regarding a proposed distribution which had been accepted by Distransky but not by Spear. The proposed distribution included transfer of the promissory notes to the trust at the inventory value, with no further interest accrual. The personal representative's proposal was outlined in a letter to Spear and Distransky, which was attached to the application for instructions. That letter stated that "[o]n Katherine Reading's passing the notes would be distributed to Paula [Spear] at the value on the date of Thomas's death. The notes and their interest accrued to that date would be credited to Paula's share of the trust."

The application for instructions includes a certificate of service reciting that true and correct copies were served by mail upon Distransky, Spear, and the trustee on January 9, 1998.

On January 23, 1998, the county court entered an order providing in part that the interest of the estate in the promissory notes was to be distributed to the trustee at the values shown on the inventory; and that upon completion of this and other distribution of assets, the personal representative was to "proceed to close this estate after notice to all persons." No appeal was taken from this order.

Thereafter, on April 21, 1998, the personal representative filed a "Formal Petition for Complete Settlement After Formal Testate Proceeding" and a "Schedule of Distribution," which reflected that certain assets of the estate, including but not limited to the five promissory notes, were to be distributed to "Norwest Bank, Trustee." The only assets scheduled for personal distribution to Spear and Distransky were "½ Personal Effects and Household

Furnishings" to each. Spear and Katherine filed an objection alleging that the final accounting and schedule of distribution had not been provided to their counsel, but, rather, retrieved by him from the court file. They further alleged that the promissory notes "are not assets of the Estate and should have been canceled" and that "any such distribution of these promissory notes will constitute a breach of an agreement of this interested party and the Decedent prior to death." Spear and Katherine prayed that "the Court continue this matter to allow the attorneys adequate time to prepare that the accounting and distribution in its current form be rejected; and for any and all such other relief as the Court deems just and appropriate."

On May 24, 1999, Spear and Katherine filed a "Motion for Stay of Proceedings or in the Alternative a Motion for Continuance." They alleged that the issues raised with respect to the closing of the estate were related to those being litigated in a declaratory judgment action then pending in an Indiana state court and requested that all estate proceedings be stayed pending the conclusion of the Indiana litigation. In response, the personal representative filed a resistance alleging that the matter had already been continued on several occasions at the request of Spear, that the issues in the Indiana proceedings had no bearing on the estate proceeding, and that "[a]ll issues raised in the Indiana proceeding can be addressed on the disposition of assets in the Thomas and Katherine Reading Trust."

On December 10, 1999, the personal representative filed an "Amended Formal Petition for Complete Settlement After Formal Testate Proceeding" and an "Amended Schedule of Distribution" which again reflected that the promissory notes would be distributed to the trustee. In response, Spear and Katherine filed a "Second Motion for Stay of Proceedings or in the Alternative a Motion for Continuance," again arguing that the issues would be decided in the ongoing Indiana litigation. The court held a hearing on these matters on December 28. No evidence was offered or received during this hearing, although a copy of the aforementioned settlement agreement was marked for identification. The hearing consisted entirely of a colloquy between the judge and counsel for the parties, which included the following:

[Counsel for Norwest]: What I'd like to do is set up some kind of a framework, so we can bring this to a conclusion.

THE COURT: . . . But this set-off of the notes, I don't know. That's interesting. I've never seen that.

[Counsel for Spear and Katherine]: If I may, Judge. I — I think that that's a legal issue that the Court is going to have to make some determination of, but it seems to me statutorily that's certainly a defense that Paula Spears [sic] is entitled to bring for the Court's consideration.

[Counsel for Norwest]: And its going to come up some time or another. It's—

[Counsel for Spear and Katherine]: Absolutely—

[Counsel for Norwest]: It's either going to come up today—

[Counsel for Spear and Katherine]: —absolutely.

[Counsel for Norwest]: —or it's [sic] come up on the death of Katherine when the Trustee says, "We're distributing these notes, and they're worth $70,000.00. He're [sic] you go."

Thereafter, on January 3, 2000, Spear and Katherine filed an "Objection to the Amended Petition for Complete Settlement and the Final Distribution Schedule." They asserted that the promissory notes were not assets of the estate because they should have been canceled and are barred from collection by the applicable statute of limitations.

On February 2, 2000, the county court filed a "Formal Order for Complete Settlement After Formal Testate Proceeding" and a separate order directing the personal representative to transfer the promissory notes to the trustee through a single transaction conservatorship. On February 22, the trustee filed a "Formal Closing Receipt" acknowledging receipt of various assets from the estate including the promissory notes. On February 29, Spear and Katherine filed a notice of appeal from the orders filed on February 2.

## ASSIGNMENTS OF ERROR

Spear and Katherine assign that the county court erred in ordering the promissory notes transferred from the estate to the

trust because their enforcement is barred by the statute of limitations. They also assign error in the admission of testimony based on hearsay, speculation, conjecture, and conclusions.

## STANDARD OF REVIEW

■ An appellate court reviews probate cases for error appearing on the record made in the county court. *In re Estate of Jakopovic, ante* p. 248, 622 N.W.2d 651 (2001); *In re Estate of Myers*, 256 Neb. 817, 594 N.W.2d 563 (1999).

## ANALYSIS

■ Spear and Katherine's principal contention is that any attempt to enforce Spear's liability on the promissory notes is barred by the statute of limitations set forth in Neb. Rev. Stat. § 25-205 (Reissue 1995), which provides in pertinent part that "an action upon . . . any agreement, contract, or promise in writing . . . can only be brought within five years." We have stated that the " 'benefit of the statute of limitations is personal and, like any other personal privilege, may be waived and will be unless pleaded.' " *State ex rel. Marsh v. Nebraska St. Bd. of Agr.*, 217 Neb. 622, 630, 350 N.W.2d 535, 540 (1984), quoting *Vielehr v. Malone*, 158 Neb. 436, 63 N.W.2d 497 (1954). The statute of limitations does not operate by its own force as a bar, but, rather, operates as a defense to be pleaded by the party relying upon it. *Vielehr v. Malone, supra.* It follows that judicial determination of whether a claim is barred by a statute of limitations ordinarily requires both the assertion of the claim and the responsive pleading of the defense, either by answer or demurrer. See *Welsch v. Graves*, 255 Neb. 62, 582 N.W.2d 312 (1998).

The record reflects no action by the personal representative against Spear to enforce liability on the promissory notes. Nevertheless, Spear and Katherine argue that assertion of the statute of limitations defense was necessary and appropriate because of Neb. Rev. Stat. § 30-24,101 (Reissue 1995), which provides:

> Unless a different intention is indicated by the will, the amount of a noncontingent indebtedness of a successor to the estate if due, or its present value if not due, shall be offset against the successor's interest; but the successor has

the benefit of any defense which would be available to him in a direct proceeding for recovery of the debt.

As used in this statute, a "successor" is a person, other than a creditor, who is "entitled to property of a decedent under his or her will or the Nebraska Probate Code." Neb. Rev. Stat. § 30-2209(46) (Cum. Supp. 2000).

As noted above, the will which was admitted to probate does not appear in the appellate record. Under the amended schedule of distribution, Spear and Distransky were each to receive one-half of Reading's personal effects and household furnishings, with all other assets to be distributed to the trust. There is nothing in the record to indicate that the personal representative sought to offset any liability which Spear may have on the notes against her share of the personal effects and household furnishings, or against any other present interest she may have. The only reference to any offset is found in the personal representative's letter to Spear and Distransky attached to its application for instructions, wherein it states that "[o]n Katherine Reading's passing the notes would be distributed to Paula at the value on the date of Thomas's death" and "[t]he notes and their interest accrued to that date would be credited to Paula's share of the trust." In ordering the notes transferred to the trustee, the county court made no determination as to whether enforcement of the notes by action or offset at some future date would be barred by the statute of limitations. Unlike the circumstances of *Matter of Will of Cargill*, 420 N.W.2d 268 (Minn. App. 1988), upon which Spear and Katherine rely, the county court in this case was not presented with the question of whether an heir's interest in an estate should be offset by an indebtedness existing at the time of death.

Existence of an actual case or controversy is necessary for the exercise of judicial power, even though it is not a constitutional prerequisite for jurisdiction. *State v. Jacob*, 256 Neb. 492, 591 N.W.2d 541 (1999); *Gaylen v. Balka*, 253 Neb. 270, 570 N.W.2d 519 (1997). A court decides real controversies and determines rights actually controverted, and does not address or dispose of abstract questions or issues that might arise in a hypothetical or fictitious situation or setting. *US Ecology v. State*, 258 Neb. 10, 601 N.W.2d 775 (1999); *Gaylen v. Balka, supra.* A justiciable issue requires a present, substantial contro-

versy between parties having adverse legal interests susceptible to immediate resolution and capable of present judicial enforcement. *Greater Omaha Realty Co. v. City of Omaha,* 258 Neb. 714, 605 N.W.2d 472 (2000); *Putnam v. Fortenberry,* 256 Neb. 266, 589 N.W.2d 838 (1999).

In this case, there is no justiciable issue requiring adjudication of Spear and Katherine's statute of limitations defense because no claim on the notes has been asserted, either directly or as an offset pursuant to § 30-24,101. The fact that the record suggests that this issue may arise in the future, following the death of Katherine, merely illustrates that no present controversy exists with respect to the statute of limitations issue asserted by Spear and Katherine. Thus, the county court correctly refrained from determining whether the statute of limitations barred any action on the promissory notes because it was not presented with a justiciable controversy requiring this determination to be made.

We do not reach Spear and Katherine's argument that the county court erred in admitting testimony that was based on hearsay, speculation, conjecture, and conclusions, because this issue is not argued in their brief. Errors that are assigned but not argued will not be addressed by an appellate court. *State ex rel. NSBA v. Flores, ante* p. 256, 622 N.W.2d 632 (2001); *Bowers v. Dougherty,* 260 Neb. 74, 615 N.W.2d 449 (2000). Moreover, we note that based upon the record submitted for our review, no testimony or other evidence was received by the county court.

## CONCLUSION

Finding no error on the record, we affirm the judgment of the county court authorizing the transfer of the promissory notes to the trustee.

AFFIRMED.

CONNOLLY, J., not participating.