ROBERT L. ANDERSON AND LAVISTA LOTTERY, INC., APPELLEES, V.
RICHARD T. BELLINO AND LAVISTA KENO, INC., APPELLANTS.

658 N.W.2d 645

Filed March 28, 2003.   No. S-01-584.

William F. Hargens and Kathryn D. Folts, of McGrath, North, Mullin & Kratz, P.C., for appellants.

Thomas J. Culhane and Patrick R. Guinan, of Erickson & Sederstrom, P.C., for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.
## I. NATURE OF CASE
Appellees, Robert L. Anderson and LaVista Lottery, Inc. (Lottery), brought this action in Cass County District Court against appellants, Richard T. Bellino and LaVista Keno, Inc. (Keno). Anderson and Lottery alleged that Bellino had breached a fiduciary duty he owed to Anderson and Lottery by usurping a corporate opportunity belonging to Lottery and directing such opportunity to Keno. Bellino and Keno denied the critical allegations in the petition, and Bellino further responded by filing a claim for a setoff and a counterclaim seeking, inter alia, compensation for services he had provided to Lottery.

Trial in the case was bifurcated. At the conclusion of the liability phase, the district court concluded that Bellino, an officer, director, and 50-percent shareholder in Lottery, had breached the duty of " 'utmost good faith and loyalty' " which he owed to Anderson and Lottery. The district court reached this conclusion because Bellino had formed his own corporation, Keno, and had successfully bid against Lottery for the 1998 contract to operate a keno parlor in LaVista, Nebraska. The district court imposed a constructive trust upon Keno for the benefit of Anderson and

Lottery and reserved further ruling until completion of the accounting phase of the case. The district court denied Bellino relief on his claim for a setoff and on his counterclaim. Trial was had on the accounting. In view of the breach of fiduciary duty and in furtherance of the constructive trust, following the accounting phase of the trial, the district court awarded relief to Anderson and Lottery. The district court, inter alia, ordered Bellino to pay Anderson and Lottery $644,992.63, representing sums by which Keno had been improperly diminished and other sums Bellino had inequitably received in connection with the operation of Keno, which amount could be reduced by $172,514.63 if Bellino were successfully to transfer the stock of Keno to Lottery and persuade the city of LaVista to relicense the keno contract from Keno in favor of Lottery.

Bellino and Keno appeal. Following our review, we conclude that the district court did not err in determining there had been a breach of fiduciary duty, imposing a constructive trust, and accounting therefor. Accordingly, we affirm.

## II. STATEMENT OF FACTS

In 1989, the city of LaVista was seeking bids for the operation of a keno-type lottery for the city. Bellino, an electrician by training and experience, became interested in bidding. The bid specifications included a restaurant and lounge to be operated in connection with the keno operation. Bellino testified that he wanted someone to share the financial risk of a potential keno operation. In addition, Bellino wanted to find someone with experience in the restaurant and lounge business. At least two people declined to bid with Bellino, and he eventually approached Anderson, who evidently was involved in a number of successful businesses, liked to play keno, and knew people in the gaming industry. Anderson was aware of the bidding. Anderson and Bellino began investigating the keno business. They sought the advice of experienced operators in Reno, Nevada, who had contacts with keno equipment suppliers and who explained the mechanics of the industry. In addition, Bellino and Anderson investigated potential locations for the keno operation.

In March 1989, Bellino and Anderson submitted their bid for the LaVista keno contract. In April 1989, Bellino and Anderson

formed Lottery, a Nebraska corporation, for the purpose of operating the keno parlor if they were awarded the contract. Anderson and Bellino each owned 50 percent of the shares of stock of Lottery, and both were officers and directors of the corporation. Bellino was the president and treasurer, and Anderson was the vice president and secretary.

The bid submitted by Anderson and Bellino was successful. Lottery entered into a lottery operation contract with the city of LaVista on May 16, 1989. The initial contract was for a 5-year term. After the keno parlor was opened, the contract was amended several times. Pursuant to the fifth amendment, executed on October 13, 1992, the fixed term of the contract was extended through July 31, 1998, with a provision that the term would continue indefinitely beyond that fixed term until one party served 60 days' written notice of termination upon the other.

Following the award of the contract, Bellino and Anderson arranged for Lottery to lease space for the keno operation, purchase necessary equipment, and hire management and nonmanagement employees. Bellino and Anderson shared the initial investment of around $300,000 plus equipment.

Lottery initially entered into a lease with LaVista Commercial Partnership for space in the LaVista Plaza. Subsequently, Bellino purchased LaVista Plaza. Thereafter, Bellino leased the space in LaVista Plaza to Lottery.

The keno parlor operated by Lottery was successful. During the approximately 9 years that Lottery operated the keno parlor, the district court found, and the record supports the finding, that Lottery "had total gross receipts in excess of 100 million dollars" and that "Bellino and Anderson each personally received over 4 million dollars in salary and distributions during that time period." Initially, Anderson and Bellino received salaries from Lottery. In 1993, following the advice that Bellino told Anderson he had received from an accountant, Anderson and Bellino stopped receiving salaries from Lottery. Anderson and Bellino, as equal shareholders in Lottery, divided the profits from the operation of the keno parlor equally. In addition, because Lottery rented space in LaVista Plaza which was owned by Bellino, Bellino received monthly rental payments from Lottery.

Prior to their formation of Lottery, Anderson and Bellino were each involved in other businesses. Before Lottery commenced operation, a general manager was identified who would be responsible for the day-to-day activities of Lottery. The general manager hired and fired employees, purchased supplies, operated the keno game, and scheduled and supervised the employees. In addition to the general manager, Lottery hired keno managers, supervisors, and keno writers. Lottery also opened a lounge and a restaurant in conjunction with its keno operation. At some point, an additional manager was hired and put in charge of the day-to-day operations of both the lounge and the restaurant. If problems arose that could not be handled by the general manager or the general manager's staff, Anderson and Bellino were generally available. The district court found, and the record supports the finding, that

> [t]here was no express agreement between Bellino and Anderson as to the amount of time that each would devote to the lottery business. To the contrary, their agreement, as even evidenced by the testimony of Bellino, was simply that each would participate as much as they [sic] could in the business and that the day-to-day operations of the business would be conducted by managers hired by Lottery.

Neb. Rev. Stat. § 9-646(3) (Reissue 1997) was amended in October 1993 to provide in part that "[n]o owner or officer of a lottery operator with whom the county, city, or village contracts to conduct its lottery shall play any lottery conducted by such county, city, or village." The Nebraska Department of Revenue brought administrative charges against Anderson relating to a December 1993 gambling incident. Anderson agreed to pay an administrative fine of $4,500. As part of the stipulation of the settlement, the department agreed that the settlement would have no impact on Anderson's license to operate Lottery.

Subsequently to the award of the LaVista keno contract to Lottery, Anderson and Bellino became involved in other ventures, including a racetrack near Omaha, the I-80 Speedway. Anderson was a part owner from 1994 to 1996. Both Anderson and Bellino spent significant time from 1994 through 1996 operating the speedway. In addition, Bellino invited Anderson to bid with him for a Fremont keno contract. Eventually, Anderson and

his brother agreed to and became investors in a corporation that was awarded a Fremont keno contract. Along with Bellino, they were still investors in the Fremont venture as of April 2000.

From 1994 to 1998, Lottery employed general managers, keno managers, supervisors, and keno writers. Although Bellino and Anderson continued to be involved in Lottery, the evidence indicated that Bellino began to spend more time in the lounge of Lottery due, in part, to his personal relationship with Lottery's lounge manager. Anderson continued to be involved in the business to a lesser degree than Bellino. According to Lottery's bookkeeper, Anderson would come to the Lottery facilities at least once or twice a week in the mornings to review records and effect repairs. The bookkeeper testified that she talked to Anderson on a daily basis regarding Lottery's business. Bellino acknowledged in his testimony that he did not complain to Anderson about Anderson's degree of involvement in Lottery until approximately March 1998 and that Anderson never refused to do anything that Bellino asked him to do.

Shortly before Christmas 1997, Anderson met with Bellino and discussed with him the fact that Lottery's keno contract with LaVista was set to expire on July 31, 1998. Anderson advised Bellino that if the contract was not extended, Lottery would need to submit a new bid. Bellino told Anderson that he was aware the contract would expire in the summer and that he would meet with Anderson after the holidays to discuss Lottery's course of action.

On or about March 7, 1998, Anderson received a letter from Bellino, dated February 26, 1998, in which Bellino stated that he felt that he was doing a disproportionate amount of work for Lottery and receiving inadequate compensation. As a result, Bellino indicated he no longer intended to be associated with Lottery after the corporation's keno contract expired on July 31, 1998. As the owner of the premises where Lottery operated its keno parlor, Bellino also informed Anderson that Lottery would have to vacate the premises when the keno contract with the city of LaVista expired. Finally, Bellino informed Anderson that when the lottery contract comes "up for rebid, I will bid on it myself, either individually or through another entity which I will establish." At the time Bellino sent the February 26 letter, he

was Lottery's president, as well as a director and a 50-percent shareholder in the corporation.

After receiving the February 26, 1998, letter, Anderson attempted on several occasions to meet in person with Bellino to discuss the letter. Although the date is not clear in the record, some time prior to April 21, Anderson met with Bellino at the keno parlor. During that meeting, Anderson advised Bellino that he was unaware that Bellino thought he was doing more than his share of the work and Anderson expressed his willingness to try to resolve any concerns that Bellino had with Lottery or with Anderson. Following the meeting with Bellino, Anderson contacted an attorney regarding the situation with Bellino. In a letter dated April 21, 1998, the attorney informed Bellino that it was Lottery's belief that the keno contract with the city of LaVista was a corporate opportunity. The letter expressed Lottery's desire to have Bellino cooperate with Lottery in bidding for the new contract.

During the first quarter of 1998, Bellino met in person with LaVista's city administrator, Cara L. Pavlicek. During that meeting, Bellino inquired as to the city's intentions with regard to the keno contract when it expired in July. Pavlicek testified that she had several conversations with Bellino, all of which occurred while Bellino continued to be the president, a director, and a 50-percent shareholder of Lottery. Pavlicek testified that prior to her conversations with Bellino, she was not aware that the keno contract was due to expire in July 1998. Pavlicek testified that the city had been satisfied with the keno operation as conducted by Lottery. However, after her initial conversation with Bellino, Pavlicek reviewed the contract, discussed the city's options with the city attorney, and recommended to the city council that the keno contract be put up for competitive bid. Indeed, the agenda for the city council meeting of April 21, 1998, regarding the keno contract, states, "The current contractor has advised he is not interested in renewal of the contract with his existing business partnership. It is anticipated that the City will receive an independent proposal from Mr. Bellino."

On April 21, 1998, the LaVista City Council voted to accept Pavlicek's recommendation and put the keno contract up for bids. On April 23, Bellino incorporated Keno for the purpose of

bidding for the keno contract with the city of LaVista. Bellino was the sole shareholder of Keno.

On May 4, 1998, Bellino's attorney sent a letter to Anderson and Lottery, informing them that Bellino had no interest in trying to resolve matters with Lottery and would not bid for the contract as part of Lottery. In the letter, Bellino tendered his resignation as an officer and director of Lottery "effective upon termination of the corporation's current keno lottery contract with the City of LaVista." (Emphasis in original.)

Bellino prepared and submitted a bid on behalf of Keno for the keno contract. At the time Bellino incorporated Keno and prepared Keno's bid, Bellino remained an officer of Lottery, as well as a director and a 50-percent shareholder of Lottery. Because Bellino was still an officer, director, and shareholder of Lottery at the time the Lottery bid was submitted, Anderson requested that Bellino provide him with certain personal information required by the bid specifications from all persons associated with the bidder, which information Bellino supplied to Anderson. At the time it was bidding for the new keno contract, Lottery was in good financial condition.

Only the bids by Lottery and Keno were received by the city of LaVista. The city awarded the new keno contract to Keno. Bellino admitted during trial that he knew when he formed Keno and submitted a bid on its behalf for the keno contract that if he and his new company were awarded the contract, Lottery would be harmed. Bellino also acknowledged in his testimony that he knew that Anderson objected to Keno's bidding on the contract.

The new keno contract between LaVista and Keno was signed on July 24, 1998. Lottery ceased conducting its keno operations on August 18. Shortly after August 18, Keno opened its new keno parlor in the same location where Lottery had operated. Keno hired most of the employees previously employed by Lottery. Keno has continued to operate the keno parlor since being awarded the LaVista keno contract. Bellino has invested in improvements, and the district court found that the keno parlor has continued to be successful, with gross revenues increasing in 1998 and 1999.

The evidence from the accounting trial shows that Bellino owns 100 percent of the issued and outstanding shares of Keno.

Since it began operations, Keno has paid Bellino a salary at a rate of $120,000 per year. As of December 31, 2000, Bellino had received salary payments totaling $211,199 and was due accrued but unpaid salary in the amount of $61,318.

On July 29, 1998, Anderson and Lottery filed suit against Bellino and Keno. In their petition, Anderson and Lottery alleged, inter alia, that Bellino had breached a fiduciary duty he owed to Lottery as an officer, director, and shareholder of Lottery by forming Keno and bidding on the LaVista keno contract. Anderson and Lottery alleged that Bellino had diverted a corporate opportunity and directed the opportunity to Keno. As a remedy, Anderson and Lottery sought the imposition of a constructive trust on Keno's business operations for the benefit of Anderson and Lottery.

In their amended answer and counterclaim filed on December 17, 1998, Bellino and Keno, inter alia, denied that Bellino had breached any fiduciary duty which Bellino owed to Lottery and further denied that Bellino had misappropriated a corporate opportunity belonging to Lottery. Bellino also claimed that he was entitled to "offset" any amounts claimed by Anderson and Lottery against the "reasonable value of Bellino's services provided to . . . Lottery."

For his counterclaim, Bellino alleged two "causes of action." For his first cause of action, entitled "Quantum Meruit," Bellino claimed that he was due in excess of $480,000 from Lottery for services he had provided to Lottery. For his second cause of action, entitled "Breach of Contract," Bellino alleged that he and Anderson had an oral agreement to contribute their services equally to Lottery and that Anderson had breached this agreement. Bellino sought damages in excess of $480,000 as a result of Anderson's purported breach.

As stated above, trial in this case was bifurcated. The record consists of over 900 pages of testimony and approximately 100 documentary exhibits. A total of 20 witnesses testified in person or by deposition. The liability phase of the case was tried on April 4 through 6, 2000. In an order filed May 9, the district court concluded that Bellino and Keno had obtained the LaVista lottery contract in breach of Bellino's fiduciary duty to Lottery and that the appropriate remedy for Bellino's breach was the imposition of a constructive trust for the benefit of Anderson and Lottery. The

district court ordered that a subsequent hearing be held in connection with the accounting for the trust. The district court concluded that Bellino's claim for a setoff and his two-count counterclaim were without merit and dismissed these claims.

The accounting phase of the trial was held on February 1 and 2, 2001. The accounting evidence relative to the issues on appeal is supplied as necessary in our analysis of the assignments of error. In an order filed May 9, 2001, the district court, inter alia, ordered Bellino to pay Anderson and Lottery $644,992.63, representing various items including "rents, profits and benefits resulting from Keno and Bellino receiving the keno contract from the city of LaVista." The May 9 order also provided that Bellino could receive a credit of $172,514.63 against the judgment, an amount equal to Bellino's shareholder's equity in Keno, if Bellino could transfer the stock of Keno to Lottery and persuade LaVista to relicense the keno contract from Keno in favor of Lottery. In this connection, the district court indicated in its May 9 order that the transfer of stock occur within 60 days of the date of the order, but that in the event such a transfer could not be complied with "for any reason," Bellino and Keno were ordered to hold Keno's interest in the keno contract in a constructive trust for the benefit of Anderson and Lottery. Bellino and Keno appeal the district court's orders to the extent such orders granted relief to Anderson and Lottery. Bellino does not appeal the district court's order denying his claim for a setoff and dismissing his counterclaim.

## III. ASSIGNMENTS OF ERROR

On appeal, Bellino and Keno assign nine errors, which we restate as four. Bellino and Keno claim, restated, that the district court erred (1) in finding the existence of a corporate opportunity and in further finding that Bellino had breached his fiduciary duty to Lottery by diverting such corporate opportunity belonging to Lottery, (2) in imposing a constructive trust, (3) in ordering Bellino and Keno to transfer the keno contract and all of Keno's stock to Lottery, and (4) in its accounting for the constructive trust.

## IV. STANDARDS OF REVIEW

An action to impose a constructive trust sounds in equity. *Manker v. Manker*, 263 Neb. 944, 644 N.W.2d 522 (2002);

*ProData Computer Servs. v. Ponec*, 256 Neb. 228, 590 N.W.2d 176 (1999). In an appeal of an equitable action, an appellate court tries factual questions de novo on the record, provided that when credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Burk v. Demaray*, 264 Neb. 257, 646 N.W.2d 635 (2002).

## V. ANALYSIS

### 1. CORPORATE OPPORTUNITY AND BREACH OF FIDUCIARY DUTY

Bellino and Keno contend that the district court erred when it determined that the 1998 keno contract with the city of LaVista was a corporate opportunity for Lottery and that by diverting such opportunity from Lottery to Keno, Bellino breached his fiduciary duty of "utmost good faith and loyalty" to Lottery. There is no dispute among the parties that at the time Bellino, on behalf of Keno, bid for the LaVista keno contract, he was an officer of Lottery, a member of Lottery's board of directors, and a 50-percent shareholder of Lottery. There is no dispute that Bellino continued to be a member of the Lottery board of directors at the time the contract was awarded to Keno. Bellino and Keno do not dispute that as a director, Bellino owed a fiduciary duty to Lottery. Bellino and Keno claim, however, that no corporate opportunity existed. Bellino and Keno further claim that if a corporate opportunity existed, it was limited to the opportunity to bid for the 1998 keno contract, that Bellino did nothing to impede Lottery from bidding for the 1998 keno contract by merely submitting a competing bid, and that, therefore, Bellino did not usurp a corporate opportunity. In addition, Bellino and Keno claim that in the absence of a noncompete agreement, Bellino was free to compete with Lottery for the keno contract and did not breach his fiduciary duty to Lottery. We reject the arguments of Bellino and Keno.

### (a) Corporate Opportunity

Bellino and Keno argue that Lottery had no expectancy in the 1998 keno contract and that, therefore, no corporate

opportunity existed. They further argue that if a corporate opportunity existed, then the opportunity was limited to the opportunity "to bid" for the keno contract. Brief for appellant at 27. We have previously stated that "in order to be a corporate opportunity, the business must generally be one of practical advantage to the corporation and must fit into and further an established corporate policy." *Anderson v. Clemens Mobile Homes*, 214 Neb. 283, 289, 333 N.W.2d 900, 905 (1983). The facts demonstrate that the business for which Lottery was bidding in 1998 was the business of operating a keno parlor for the city of LaVista pursuant to a contract issued by the city, the same business in which Lottery had been engaged for the previous 9 years and the purpose for which Lottery was incorporated. Bellino admitted that if Lottery were not awarded the keno contract, the corporation would be harmed. Contrary to the arguments asserted by Bellino and Keno, the corporate opportunity was not the right to bid; the bidding process was merely the "preliminary step" by which Lottery sought to acquire the opportunity embodied in the award of the keno contract. See *Nebraska Power Co. v. Koenig*, 93 Neb. 68, 78, 139 N.W. 839, 843 (1913). The record shows that the keno contract would have served as a "practical advantage" to Lottery and would have "fit into and further[ed] an established corporate policy." See *Anderson*, 214 Neb. at 289, 333 N.W.2d at 905. The facts thus establish that the 1998 keno contract was a corporate opportunity for Lottery.

### (b) Breach of Fiduciary Duty

■ In considering the claim asserted by Bellino and Keno regarding the fiduciary duty a director owes the corporation, we are guided by our previous decisions. In *Koenig*, 93 Neb. at 75, 139 N.W. at 841-42, we long ago described a corporate director's fiduciary duty to the corporation as follows:

"The rule is thoroughly embedded in the general jurisprudence of . . . America . . . that the status of directors is such that they occupy a fiduciary relation toward the corporation and its stockholders, and are treated by courts of equity as trustees. Courts hold the directors of a corporation to the strictest accountability. Conduct inconsistent with any duty

is condemned. The fiduciary relation is so vital that directors are not only prohibited from making profit out of corporate contracts, and from dealing with the corporation except upon the most open and on the fairest terms, but the rule of accountability is so strict that they are not permitted to anticipate the corporation in the acquisition of property reasonably necessary for carrying out the corporate purposes or conducting the corporate business." 2 Thompson, Corporations (2d ed.) secs. 1215, 1246.

When discussing a corporate officer or director's fiduciary duty to the corporation, we have also stated:

[A]lthough an officer or a director of a corporation is not necessarily precluded from entering into a separate business because it is in competition with the corporation, his fiduciary relationship to the corporation and its stockholders is such that if he does so he must prove . . . that he did so in good faith and did not act in such a manner as to cause or contribute to the injury or damage of the corporation, or deprive it of business; if he fails in this . . . proof, there has been a breach of that fiduciary trust or relationship. . . . The general rule is stated to be that a director or other corporate officer cannot acquire an interest adverse to that of the corporation while acting for the corporation or when dealing individually with third persons. 3 W. Fletcher, Cyclopedia of the Law of Private Corporations § 861 (rev. perm. ed. 1975).

*Anderson v. Clemens Mobile Homes*, 214 Neb. 283, 288, 333 N.W.2d 900, 904 (1983).

Bellino and Keno claim that because Bellino did nothing to impede Lottery from bidding for the keno contract and cooperated with Anderson when Lottery prepared its bid for the keno contract, Bellino satisfied his fiduciary duty to Lottery. This argument ignores, however, that Bellino's bid through Keno for the keno contract, was "an act of distinct hostility" to Lottery. See *Koenig*, 93 Neb. at 74, 139 N.W. at 841. Bellino's actions and ultimately Keno's bid created a contest which, if Keno were successful, would necessarily deprive Lottery of business and damage Lottery. See *Anderson, supra*. As a director, Bellino's fiduciary duty was to procure the keno contract for Lottery and to forbear from obtaining it for his exclusive benefit. See *Koenig, supra*.

Bellino argues that he acquitted his fiduciary responsibilities to Lottery by cooperating with Lottery in the preparation of its keno contract bid. We do not accept this argument. The record shows that Bellino's cooperation, consisting of providing personal financial data to Anderson to be included in Lottery's bid documents and attending the meeting with LaVista officials when Lottery's bid was discussed, was of little consequence and were eclipsed by Bellino's acts which were antagonistic to Lottery.

■ Additionally, Bellino cannot successfully claim that he was free to submit a bid on behalf of his own corporation against Lottery simply because he had not signed a noncompete agreement. The absence of a noncompete agreement is of no significance in the context of this case. Under the law, a corporate director may not compete with the corporation if the director's competition "cause[s] or contribute[s] to the injury or damage of the corporation, or deprive[s] it of business." *Anderson v. Clemens Mobile Homes*, 214 Neb. 283, 288, 333 N.W.2d 900, 904 (1983). The evidence is uncontroverted that Bellino's successful bid for the LaVista keno contract deprived Lottery of its only source of business. Thus, under the law governing the fiduciary duty of corporate directors and given the facts of this case, Bellino, through Keno, should not have competed with Lottery for the LaVista keno contract.

■ As a director of Lottery, Bellino occupied a fiduciary relationship toward the corporation. " 'The general rule is . . . that a director . . . cannot acquire an interest adverse to that of the corporation . . . when dealing individually with third persons.' " *I. P. Homeowners v. Radtke*, 5 Neb. App. 271, 283, 558 N.W.2d 582, 590 (1997). By submitting a bid on behalf of Keno for the city of LaVista's keno contract, Bellino acted in a manner directly adverse to Lottery's interests and contrary to his duty as a fiduciary of Lottery. Based upon our de novo review of the record, we conclude that the district court did not err when it determined that Bellino had breached his fiduciary duty of "utmost good faith and loyalty" which he owed to Lottery by usurping a corporate opportunity belonging to Lottery. Accordingly, we conclude there is no merit to Bellino and Keno's assignments of error regarding corporate opportunity and breach of fiduciary duty.

## 2. IMPOSITION OF CONSTRUCTIVE TRUST

Bellino and Keno contend that the district court erred when it imposed a constructive trust against Keno and ordered that Keno hold its interest in the LaVista keno contract for the benefit of Anderson and Lottery. We conclude that on the facts of this case, the district court did not err in imposing a constructive trust.

A constructive trust is a relationship, with respect to property, subjecting the person who holds title to the property to an equitable duty to convey it to another on the ground that his or her acquisition or retention of the property would constitute unjust enrichment. *Manker v. Manker*, 263 Neb. 944, 644 N.W.2d 522 (2002); *ProData Computer Servs. v. Ponec*, 256 Neb. 228, 590 N.W.2d 176 (1999). We have stated:

> A constructive trust may arise by operation of law where legal title is acquired by virtue of a confidential relationship between the grantor and the grantee and under such circumstances that the grantee ought not, according to the rules of equity and good conscience, hold the benefits. Where such circumstances exist, a court of equity will raise a trust by construction and convert the grantee into a trustee of the legal title.

*Fleury v. Chrisman*, 200 Neb. 584, 588-89, 264 N.W.2d 839, 842 (1978). Intangible property and liquid assets such as stocks and bank and investment accounts may be held subject to a constructive trust. *Manker, supra; ProData Computer Servs., supra.* Regardless of the nature of the property upon which the constructive trust is imposed, a plaintiff seeking to establish the trust must prove by clear and convincing evidence that the individual holding the property obtained title to it by fraud, misrepresentation, or an abuse of an influential or confidential relationship and that under the circumstances, such individual should not, according to the rules of equity and good conscience, hold and enjoy the property so obtained. *Id.*

We have recognized that where "a situation exists which is contrary to the principles of equity and which can be redressed within the scope of judicial action, a court of equity will devise a remedy to meet the situation." *Anderson v. Clemens Mobile Homes*, 214 Neb. 283, 287, 333 N.W.2d 900, 904 (1983). Furthermore, the "traditional remedy imposed by courts upon a

finding of a misappropriation of a corporate opportunity is the impression of a constructive trust in favor of the corporation upon the property." See *I. P. Homeowners v. Radtke*, 5 Neb. App. 271, 284, 558 N.W.2d 582, 590 (1997) (citing 3 William M. Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 861.50 (rev. perm. ed. 1994)). See, generally, *Nebraska Power Co. v. Koenig*, 93 Neb. 68, 139 N.W. 839 (1913) (imposing constructive trust in favor of corporation when application to divert river for hydroelectric plant was filed by corporate director on his own behalf).

Upon our de novo review of the facts and having concluded that Bellino breached his fiduciary duty to Lottery by submitting a bid and gaining the LaVista keno contract on behalf of Keno to the detriment of Lottery, we conclude that the district court did not err in imposing a constructive trust against Keno for the benefit of Lottery.

### 3. TRANSFER OF KENO STOCK TO LOTTERY

Following the accounting phase of the trial, the district court entered an order providing for alternative forms of relief. In one portion of the order, the district court directed Bellino and Keno to transfer all of Keno's stock to Lottery and to take steps to obtain licensing approval of Lottery from LaVista for the purpose of reassigning the contested keno contract from Keno to Lottery. If the stock transfer and relicensing were accomplished, Bellino and Keno would receive a credit against the judgment. The order further provided that if such steps could not be accomplished "for any reason," a constructive trust would be imposed in lieu of such relief. Under the constructive trust, Bellino and Keno would hold Keno's interest in the keno contract as trustees in favor of Anderson and Lottery. On appeal, Bellino and Keno argue that the district court erred in ordering the stock transfer and relicensing because such relief is impossible for a variety of reasons.

The record in this case does not permit us to comment on this assignment of error, nor are we required to do so. Whether the transfer of stock, even if permissible, would be accompanied by the relicensing of the keno contract from Keno to Lottery by the city is speculative. Even if Bellino and Keno were correct that this portion of the order cannot be complied with, the relief

of a constructive trust remains available and has been approved by this court elsewhere in this opinion. Having concluded that the imposition of a constructive trust is an appropriate remedy, we need not consider the claim asserted by Bellino and Keno relative to the hypothetical alternative remedy. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the case and controversy before it. *Rush v. Wilder*, 263 Neb. 910, 644 N.W.2d 151 (2002). See *In re Estate of Reading*, 261 Neb. 897, 626 N.W.2d 595 (2001).

### 4. ACCOUNTING FOR CONSTRUCTIVE TRUST

Following the accounting phase of the trial, and in the absence of the potential credit for $172,514.63, the district court entered judgment in favor of Anderson and Lottery in the amount of $644,992.63.

Bellino and Keno claim the district court erred in various respects in its accounting for the constructive trust, including relying on inadmissible testimony by the witness Dennis Hein, requiring Bellino to reimburse Lottery for compensation he received from Keno, refusing to allow Bellino and Keno a "credit" for various "expenses" allegedly incurred during Keno's operation, and ordering the payment of other items denominated by Bellino and Keno as "attorneys' fees" and "interest." We reject the arguments asserted by Bellino and Keno regarding these claimed errors.

The purpose of an accounting "is to adjust the accounts of the parties and render complete justice." 1A C.J.S. *Accounting* § 38 b. at 35 (1985). In the instant case, the district court imposed a constructive trust upon Keno, requiring Keno to hold the LaVista keno contract for the benefit of Lottery. Once the district court determined that Keno would be held in a constructive trust for the benefit of Lottery, it was necessary to have an accounting and properly determine the corpus of the trust. In the accounting, the district court examined the expenses and revenue of Keno. When the district court determined that an expense was reasonably incurred by Keno, such as Keno's lease payment for the space it rented to operate the keno parlor, it approved the expense as the ordinary cost of doing business. If, however, during the accounting, the district court determined that an expense incurred by Keno was unusual or unjustified, such sum had to be repaid to

avoid an improper reduction in the trust corpus to the detriment of Lottery, which had become the beneficiary of the trust. In this regard, the district court determined that several expenses incurred by Keno were inequitably paid to or for the benefit of Bellino, and Bellino and Keno take issue with such determinations on appeal.

In the theory of unjust enrichment, a constructive trustee may be compelled to convey or assign the corpus of a trust property and to account for and pay over rents, profits, issues, and income which the constructive trustee has actually received or, in general, which he or she might by exercise of reasonable care and diligence have received. *Ryan v. Plath*, 18 Wash. 2d 839, 140 P.2d 968 (1943) (cited with approval in *I. P. Homeowners v. Radtke*, 5 Neb. App. 271, 558 N.W.2d 582 (1997)). Generally, a trustee, including a constructive trustee, may be reimbursed or indemnified for expenses incurred or advances made in the execution of the trust, so long as the expenses or advances are considered proper in the administration of the trust. See, generally, 76 Am. Jur. 2d *Trusts* § 628 (1992); 90 C.J.S. *Trusts* § 471 (1955). The party seeking reimbursement bears the burden of demonstrating the appropriateness of the expenses. *I. P. Homeowners, supra.* When considering the expenses incurred by a constructive trustee, we articulated the rule that "any advantage beyond proper expenses and compensation belongs to the *cestui que trust*." *Nebraska Power Co. v. Koenig*, 93 Neb. 68, 77, 139 N.W. 839, 842 (1913). We have stated that "[t]o rule otherwise would permit wrongdoers to be unjustly enriched or otherwise benefit parties who have obtained property with actual or constructive knowledge of [their improper] actions . . . in acquiring the property." *City of Hastings v. Jerry Spady Pontiac-Cadillac, Inc.*, 212 Neb. 137, 144-45, 322 N.W.2d 369, 373 (1982).

As a threshold matter, Bellino and Keno claim that the testimony of Hein, an accountant, called as a witness by Anderson and Lottery, should have been excluded as irrelevant and that the district court erred in relying on this inadmissible testimony in performing its accounting. Our review of the record shows that Hein primarily testified concerning Keno's income and expenses and that his testimony was based upon financial documents produced by Keno. Financial documents, including Keno's general

ledgers and financial statements, were admitted into evidence without objection by Bellino and Keno. We have previously recognized that the admission of evidence which is "primarily duplicative" of other evidence admitted into the record is not reversible error. See, generally, *State v. Bradley*, 236 Neb. 371, 390, 461 N.W.2d 524, 538 (1990) (*cert. denied* 502 U.S. 846, 112 S. Ct. 143, 116 L. Ed. 2d 109 (1991)).

Bellino and Keno also claim that Hein's testimony went to money "damages" and that such damages are not available in this case. Brief for appellant at 36. We do not accept the characterization placed on Hein's testimony by Bellino and Keno. Our review of the record shows that Hein testified as to the nature and extent of Keno's expenses and compared those expenses to Lottery's expenses when it operated the LaVista keno parlor. Such testimony is relevant to an accounting action, where the goal of an accounting for a constructive trust is to identify "any advantage beyond proper expenses and compensation [which advantage] belongs to the [constructive trust]." See *Koenig*, 93 Neb. at 77, 139 N.W. at 842. Based upon our de novo review of the record, see *Burk v. Demaray*, 264 Neb. 257, 646 N.W.2d 635 (2002), we conclude that Hein did not opine on "damages," but instead provided calculations from which the district court could determine, based on application of the law, what expenses paid by Keno or benefits received by Bellino improperly diminished Keno.

Finally, we note that to the extent Bellino and Keno object to the relevance of Hein's testimony concerning the nature of Keno's expenses and also object to documents Hein prepared summarizing his review of those expenses and comparing the same to Lottery's expenses in order to determine those amounts he concluded were unnecessary or unreasonable, Bellino and Keno elicited similar evidence during their cross-examination of Hein. Indeed, Bellino and Keno introduced into evidence, through Hein, albeit with limitations, their own exhibit summarizing Hein's calculations concerning Keno's expenses in comparison to Lottery's expenses. See, generally, *In re Interest of Kelley D. & Heather D.*, 256 Neb. 465, 590 N.W.2d 392 (1999). See, also, *Pauley Lumber Co. v. City of Nebraska City*, 190 Neb. 94, 206 N.W.2d 326 (1973). In sum, the district court did not commit reversible error by admitting Hein's testimony.

Turning to the results of the accounting, under our de novo review of the record, we conclude that the district court did not err in its accounting for the constructive trust, and we recite below some, but not all, of the items in the accounting which form the basis of our approval of the district court's order. In conducting our review of the accounting, we are mindful that following the imposition of the constructive trust of Keno for the benefit of Lottery, on the record before us, it appears that Bellino, as a 50-percent shareholder of Lottery, will share in the benefit from Lottery's status as beneficiary.

Among its specific orders, the district court directed that the salary which Bellino received from Keno in the approximate amount of $211,000 be repaid. The court likewise ruled that "management fees" and fees Bellino received for supervising remodeling work for Keno be refunded. The court reasoned that Bellino had not received a salary or management fees from Lottery, despite performing similar tasks for that corporation, and to allow him to keep these sums would diminish Keno and amount to Bellino's benefiting from the breach of his fiduciary duty. The district court also determined that the interest Bellino charged Keno on a loan he made to the corporation was not reasonable. We agree with the district court that paying these various expenses amounted to a benefit to Bellino as a result of his breach of fiduciary duty.

Similarly, the district court scrutinized the purported expenses incurred by Keno during its operation of the keno parlor. To the extent that the district court determined that the expenses were unique to Keno, such as the approximately $34,000 in salary paid to Bellino's wife or the $35,000 paid to "'sponsor'" a race car belonging to Bellino's son, or were amounts that would not have been incurred if Keno had not competed for the keno contract, such as Keno's attorney and accountant fees, the district court ordered Bellino to pay such amounts. We find no error in such order.

As for other, potentially legitimate expenses, such as bills for a cellular telephone, office supplies, or postage purportedly incurred by Keno, the district court properly found an insufficient relationship between these expenses and Keno. For example, Bellino admitted in his testimony that he used postage for his

personal business as well as for the other businesses he operated, but he was unable to allocate a portion of the postage bill to Keno's operations.

Bellino and Keno claim that the district court erred in ordering them to pay Anderson and Lottery's attorney fees and interest on the judgment. We do not find language in the court's order directing that these items be paid by Bellino and Keno. We do note language in the order directing Lottery, upon receipt of money from Keno, "to first repay to Anderson all expenses, if any, actually incurred by him in pursuing this action on Lottery's behalf." Such language directs Lottery, not Bellino and Keno, to reimburse Anderson for litigation expenses.

Bellino and Keno further claim that the district court improperly awarded "prejudgment interest." We see no merit to this assertion. The district court determined that Keno borrowed money to fund its operations at the same time it was making payments to or for the benefit of Bellino. The district court further found that money taken from Keno by or on behalf of Bellino "caused Keno to incur unnecessary interest expenses total[ing] $40,006." The district court ordered Bellino to pay the $40,006. The characterization of this payment as "prejudgment interest" by Bellino and Keno is not accurate. The district court determined that as a result of Bellino's receipt of compensation and other unreasonable financial benefits, Keno was forced to borrow money, and that had Keno not been forced to borrow money, it would not have had to pay interest. This order was appropriate in an accounting for a constructive trust. See *Nebraska Power Co. v. Koenig*, 93 Neb. 68, 139 N.W. 839 (1913).

In view of the record, the assignments of error regarding the accounting are without merit. Based on our de novo review of the record, we conclude that the district court did not err in its accounting for the constructive trust.

## VI. CONCLUSION

For the reasons stated herein, and based upon our de novo review of the record, we conclude that Bellino, as a director of Lottery, breached the fiduciary duty he owed Lottery when he caused Keno to bid against Lottery for the LaVista keno contract. We affirm the district court's order imposing a constructive trust

upon Keno for the benefit of Anderson and Lottery as a result of Bellino's breach of fiduciary duty. We also affirm the district court's order which provided an accounting for the constructive trust and entered judgment in the amount of $644,992.63.

AFFIRMED.